NUMBER 13-05-384-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG







ANGELIQUE TIFFANY HARTMAN
, Appellant,


v.



THE STATE OF TEXAS, Appellee.





On appeal from the 25th District Court


of Gonzales County, Texas.






O P I N I O N



Before Chief Justice Valdez and Justices Yañez and Castillo


Opinion by Justice Castillo



 A jury convicted appellant, Angelique Tiffany Hartman, of the felony offense of
driving while intoxicated. (1) The trial court assessed punishment at ten years'
imprisonment, imposed a $1,000.00 fine, and ordered the sentence suspended to
place Hartman on community supervision for a period of five years. We affirm.

I. RELEVANT FACTS

 At approximately 12:30 a.m. on November 30, 2003, Trooper Phillip Gonzales
stopped Hartman after radar detected she was driving eighty-three miles per hour on
an interstate highway. Trooper Gonzales approached Hartman's vehicle and detected
a strong odor of alcohol emanating from Hartman and her vehicle. He observed a
nearly-empty bottle of vodka on the front seat of her vehicle. (2) Hartman admitted to
Trooper Gonzales that she last consumed a few drinks, "something stronger than
beer," at about 10:30 p.m. After Hartman failed the standard field sobriety tests,
Trooper Gonzales arrested her for driving while intoxicated. At trial, Hartman testified
she was not intoxicated. The videotape of the stop including the field sobriety tests
was admitted in evidence. 

II. POINTS OF ERROR

 By her first, second, and fifth points of error, Hartman asserts that the trial court
erred in admitting (1) evidence of the improperly administered field sobriety tests, (2)
testimony correlating the HGN results with a specific blood-alcohol content ("BAC"),
and (3) proof of the two prior DWI convictions. By her third point of error, she asserts
that the trial court erred in refusing to take judicial notice of the NHTSA Manual. In
her fourth point of error, she asserts that the evidence was legally and factually
insufficient.

III. SUFFICIENCY OF THE EVIDENCE

 By her fourth point of error, Hartman asserts the evidence is legally and factually
insufficient to sustain the conviction. The State responds that the essential elements
of the offense were proven beyond a reasonable doubt. Hartman does not challenge
the jurisdictional element as to the two prior driving-while- intoxicated convictions. (3) 
The record demonstrates that she stipulated to the two prior intoxication-related
convictions. 

A. Standard of Review

1. Legal Sufficiency

 When evaluating the legal sufficiency of the evidence, we view the evidence in
the light most favorable to the verdict and determine whether any rational trier of fact
could have found the essential elements of the offense beyond a reasonable doubt. 
Escamilla v. State, 143 S.W.3d 814, 817 (Tex. Crim. App. 2004) (citing Jackson v.
Virginia, 443 U.S. 307, 319 (1979)). This standard is meant to give full play to the
jury's responsibility to fairly draw reasonable inferences from basic facts to ultimate
facts. Sanders v. State, 119 S.W.3d 818, 820 (Tex. Crim. App. 2003). We consider
all the evidence that sustains the conviction, whether properly or improperly admitted. 
Conner v. State, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001) (citing Garcia v. State,
919 S.W.2d 370, 378 (Tex. Crim. App. 1994) (per curiam)). The conviction will be
upheld if the evidence is sufficient to support a finding of guilt under any one of the
theories submitted. Tex. Code Crim. Proc. Ann. art. 37.07 § 1(a) (Vernon Supp.
2005) (verdict must be general); Kitchens v. State, 823 S.W.2d 256, 258 (Tex. Crim.
App. 1991) (en banc).

 The legal sufficiency of the evidence is measured against the elements of the
offense as defined by a hypothetically correct jury charge for the case. (4) Malik v.
State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); Swartz v. State, 61 S.W.3d
781, 786 (Tex. App.-Corpus Christi 2001, pet. ref'd). This standard of legal
sufficiency ensures that a judgment of acquittal is reserved for those situations in
which there is an actual failure in the State's proof of the crime rather than a mere
error in the jury charge submitted. Malik, 953 S.W.2d at 240; Swartz, 61 S.W.3d at
785. We then determine if any rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt. Jackson, 443 U.S. at 319. 

2. Factual Sufficiency

 In a factual sufficiency review, we view all the evidence in a neutral light, both
for and against the finding, and set aside the verdict if "proof of guilt is so obviously
weak as to undermine confidence in the jury's determination, or the proof of guilt,
although adequate if taken alone, is greatly outweighed by contrary proof." 
Vodochodsky v. State, 158 S.W.3d 502, 510 (Tex. Crim. App. 2005) (citing Johnson
v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000)); see Zuliani v. State, 97 S.W.3d
589, 593-94 (Tex. Crim. App. 2003). In determining the factual sufficiency of the
elements of the offense, we view all the evidence neutrally, not through the prism of
"the light most favorable to the prosecution." Johnson, 23 S.W.3d at 6-7 (citing
Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996)). In conducting our
review, we consider all of the evidence weighed by the jury, comparing the evidence
which tends to prove the existence of the elemental fact in dispute to the evidence
which tends to disprove it. Id. 

 There are two ways in which the evidence may be insufficient. Zuniga v. State,
144 S.W.3d 477, 484-85 (Tex. Crim. App. 2004). First, when considered by itself,
evidence supporting the verdict may be too weak to support the finding of guilt beyond
a reasonable doubt. Id. at 485. Second, there may be both evidence supporting the
verdict and evidence contrary to the verdict. Id. Weighing all the evidence under this
balancing scale, the contrary evidence may be strong enough that the beyond-a-reasonable-doubt standard could not have been met, so the guilty verdict should not
stand. Id. This standard acknowledges that evidence of guilt can 'preponderate' in
favor of conviction but still be insufficient to prove the elements of the crime beyond
a reasonable doubt. Id. 

 We are authorized to disagree with the jury's determination even if probative
evidence exists which supports the verdict, but we must avoid substituting our
judgment for that of the fact-finder. Santellan v. State, 939 S.W.2d 155, 164 (Tex.
Crim. App. 1997) (en banc). This Court measures the factual sufficiency of the
evidence against the hypothetically correct jury charge. See Adi v. State, 94 S.W.3d
124, 131 (Tex. App.-Corpus Christi 2002, pet. ref'd). 

B. The Elements of Felony Driving While Intoxicated

 A person commits the offense of driving while intoxicated if he or she operates
a motor vehicle in a public place without the normal use of mental or physical faculties
due to the introduction of alcohol or other substances into the body. Tex. Pen. Code
Ann. §§ 49.01(2)(A), 49.04(a) (Vernon 2003). The corpus delicti of driving while
intoxicated is that someone drove or operated a motor vehicle in a public place while
intoxicated. Threet v. State, 250 S.W.2d 200, 200 (Tex. Crim. App. 1952). 

 If the State can prove a defendant had "previously been convicted two times
of an offense" related to operating a motor vehicle while intoxicated, the driving while
intoxicated offense becomes a felony of the third degree. See Tex. Pen. Code Ann. §
49.09(b) (Vernon Supp. 2005). "Intoxicated" means not having the normal use of
mental or physical faculties by reason of the introduction of alcohol, or having an
alcohol concentration of 0.08 or more. See Tex. Pen. Code Ann. § 49.01(2)(A), (B)
(Vernon 2003). Thus, a hypothetically correct jury charge as limited by the indictment
would authorize the jury to convict if it determined from the record evidence that
Hartman (1) operated a motor vehicle, (2) in a public place, (3) while intoxicated, (4)
due to the introduction of alcohol into her body, and (5) she was previously convicted
of two driving-while-intoxicated offenses. Each of these elements must be proved to
sustain a conviction. (5) See Tex. Pen. Code Ann. § 2.01 (Vernon 2003); Malik, 953
S.W.2d at 240; Gollihar v. State, 46 S.W.3d 243, 254 (Tex. Crim. App. 2001). 

 The jury may consider the defendant's refusal to submit to a breath test as
evidence of driving while intoxicated. See Bright v. State, 865 S.W.2d 135, 137
(Tex. App.-Corpus Christi 1993, pet. ref'd) (citing Finley v. State, 809 S.W.2d 909,
913 (Tex. App.-Houston [14th Dist.] 1991, pet. ref'd)); see also Tex. Transp. Code
Ann. § 724.061 (Vernon 1999) (evidence that defendant refused breath test may be
introduced into evidence at trial). 

C. Legal Sufficiency Analysis

 Hartman's argument on appeal focuses on the claimed unreliability of the results
of the standardized field sobriety tests. However, the testimony of an officer that a
person is intoxicated provides sufficient evidence to establish the element of
intoxication. Gruber v. State, 812 S.W.2d 368, 370 (Tex. App.-Corpus Christi 1991,
pet. ref'd) (citing Annis v. State, 578 S.W.2d 406, 407 (Tex. Crim. App. 1979) and
Whisenant v. State, 557 S.W.2d 102, 105 (Tex. Crim. App. 1977)); Little v. State,
853 S.W.2d 179, 183 (Tex. App.-Corpus Christi 1993, no pet.) (the uncorroborated
testimony of an arresting officer alone is sufficient to establish intoxication); Hargrove
v. State, 774 S.W.2d 771, 772 (Tex. App.-Corpus Christi 1989, pet. ref'd)
(testimony of officers sufficient to establish intoxication). Even so, for purposes of our
legal sufficiency analysis, we review the evidence in the light most favorable to the
verdict. Escamilla, 143 S.W.3d at 817 (citing Jackson, 443 U.S. at 319). 

 Hartman testified in her own defense. Hartman admitted that she had her last
drink at 10:30 p.m., prior to her arrest. She and a friend finished a bottle of wine at
Hartman's residence. Hartman testified she drank two and a half glasses of wine. 
Before leaving her residence to travel to San Antonio to visit friends for the weekend,
she placed the one-liter, half-empty bottle of vodka behind the driver's side floorboard
of her vehicle. Hartman stated she had not eaten the day before her arrest. Hartman
testified as follows on cross examination:

 Q. How often do you drink?

 A. Usually-it depends. On the weekends sometimes. This happened to
be a Saturday night.


 Q. Would you say you drink daily?

 A. No.

 Q. On the weekends, most weekends?

 A. (Moving head up and down).

 Q. What's your drink of choice? 

 A . I tend to drink vodka with grapefruit juice. I never drink it straight. 

 Q. Usually, how much vodka do you drink on a given weekend?

 A. I might have a couple on a Saturday night . . . probably [a] six-ounce
tumbler. Always grapefruit juice. 


 Q. What would two vodkas, six-ounce tumbler glasses do to you?

 A. Make me feel calmer.

Hartman testified that the effects of drinking wine or vodka depended on whether she
had eaten before consuming either alcoholic beverage. She stated that, without
eating, she would "feel calmer" after drinking "a glass or two" of wine and she would
also feel calmer after drinking "much more" vodka. Hartman further testified as
follows:

 Q. How much vodka would it take, if that's what you were drinking on
a particular day, to get you intoxicated?


 A. Once again, that would vary. 

 Q. On a day when you had not been eating?

* * * 

 A. Six.

 Q. What size bottle of that vodka was that that you had in your car?

 A. I believe it was a liter.

 Q. How many glasses or drinks of vodka can you make out of a liter? 

* * * 

 A. Probably eight to ten. 

Hartman testified that the videotape of the scene would show her stumbling because
of the effect of passing traffic, the road surface, the cold weather, and her high-heeled
boots. On re-direct examination, Hartman testified that eating food delayed the effects
of alcohol on her body. 

 The videotape of the events leading to Hartman's arrest shows she was
unsteady on her feet at the scene. Hartman refused to take the breathalyzer test. 

 After the traffic stop, Trooper Gonzales observed that Hartman's eyes were
glassy and bloodshot and she was unbalanced. He detected a strong odor of alcohol
from Hartman and her vehicle. Trooper Gonzales testified that Hartman refused to
take the breathalyzer test and, "based on the totality of everything" he observed, he
arrested Hartman for driving while intoxicated. 

 Backup Trooper Greg Castillo testified he arrived at the scene during the field
sobriety tests. He observed Hartman stumble. He heard Hartman say she had two
drinks earlier. After Hartman's arrest, Trooper Castillo performed the vehicle
inventory, retrieved a large half-empty bottle vodka from the vehicle, and smelled a
moderate odor of alcohol in the vehicle. Based on his experience and training and his
observations of Hartman at the scene, Trooper Castillo concluded she was under the
influence of alcohol. 

 Viewed in the light most favorable to the verdict, the testimony was sufficient
for a rational trier of fact to have found beyond a reasonable doubt the essential
elements of felony driving while intoxicated. Hartman admitted she drank two and a
half glasses of wine before driving. She also admitted she drank vodka on weekends
and the arrest occurred on a weekend. She refused to take the breathalyzer test. 
Both troopers at the scene observed physical manifestations of intoxication. We
conclude the evidence was legally sufficient to prove the essential elements of the
offense of felony driving while intoxicated. See Escamilla, 143 S.W.3d at 817 (citing
Jackson, 443 U.S. at 319).

D. Factual Sufficiency Analysis

 Hartman focuses her argument on appeal on the intoxication element of the
offense. For purposes of our factual sufficiency analysis, we consider the evidence
we have reviewed above and contrary evidence. See Zuliani, 97 S.W.3d at 593-94;
Zuniga, 144 S.W.3d at 484-85. 

 Hartman disputes that she was intoxicated. She acknowledges the factors
Trooper Gonzales relied upon to conclude she was intoxicated, including (1) a strong
odor of alcohol, (2) bloodshot eyes, (3) the bottle of vodka in the car, and (4) her
unsteady balance. However, she asserts that contrary evidence renders the factors
insufficient to prove intoxication. 

 To explain the condition of her eyes, Hartman points to her testimony of the
breakup of a long-term relationship that led to her crying the day before her arrest. 
Similarly, to explain her unsteady balance, she points to testimony and videotape
evidence of the five-inch-heeled boots she wore when stopped, uneven road
conditions, and strong wind. Importantly, Hartman does not address the evidence of
the strong odor of alcohol nor her admission, both at the scene and at trial, that she
drank half a bottle of wine before driving. Further, she does not address that she
drank vodka on weekends and possessed a half-empty bottle of vodka in her vehicle. 
 Hartman testified that she had been very upset the day before her arrest after
breaking up with her fiancé. She indicated that she had been crying. Although she
acknowledged that she had consumed alcohol earlier that evening on an empty
stomach, she stated the wine calmed her. Hartman also testified that she was
wearing five- inch high-heeled shoes and that the wind was blowing her slight frame
as the vehicles passed on the highway. However, the videotape shows her leaning
noticeably forward while being questioned by the trooper. The videotape also shows
the light sweater Hartman wore did not blow in the wind to the extent she described
at trial. Likewise, her unbalanced stance did not change when the wind blew the
sweater. Her swaying and trembling were marked on the videotape even when the
wind was not blowing.

 At trial, the State offered and the trial court admitted the shoes Hartman wore
on the day she testified. The record demonstrates that the height of the heels
Hartman wore at trial was equal to or similar to that of the heels she wore when
arrested. Thus, the jury observed that Hartman wore shoes ostensibly with the same
heel height and, by its verdict, determined they did not affect her balance. Similarly,
by its verdict, the jury rejected Hartman's claim of innocence. 

 That the evidence of guilt was not free of contradiction and that the credibility
of witnesses may have been subject to question does not require us to conclude that
the verdict was factually insupportable. See Zuliani, 97 S.W.3d at 593-94. Those
circumstances merely create issues for the jury to resolve. Id. The jury is the
exclusive judge of the credibility of the witnesses and of the weight to be given their
testimony. Tex. Code Crim. Proc. Ann. art. 36.13 (Vernon 1981), art. 38.04 (Vernon
1979). We will not reverse unless (1) the evidence of Hartman's guilt, taken alone,
is too weak to support the finding of guilt beyond a reasonable doubt or (2) the
contrary evidence is so strong that the standard of proof beyond a reasonable doubt
could not have been met. Zuniga, 144 S.W.3d at 484-85. 

 Viewing the relevant evidence in a neutral light, favoring neither the prosecution
nor the defense, and with appropriate deference to the jury's credibility determinations,
we conclude that the evidence supporting the verdict is not too weak to support the
jury's finding of guilt beyond a reasonable doubt. Nor is the weight of the evidence
contrary to the verdict strong enough that the State could not have met its burden of
proof. Id. We conclude that the evidence is factually sufficient to support the verdict.

E. Disposition

 Because we find the evidence legally and factually sufficient to prove that
Hartman operated a motor vehicle on a public roadway while intoxicated due to the
introduction of alcohol into her body, and that she was previously convicted of two
driving while intoxicated offenses, we overrule Hartman's fourth point of error.

IV. ADMISSION OF EVIDENCE

 By her first, second, and fifth points of error, Hartman challenges the trial
court's rulings admitting evidence of the field sobriety tests, Trooper Gonzales's
testimony as to the BAC, and the jurisdictional convictions. The State responds that
the trial court ruled properly. 

A. Standards of Review

1. Abuse of Discretion

 A trial court's admission or exclusion of evidence is reviewed under an abuse
of discretion standard. Torres v. State, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002);
Salazar v. State, 38 S.W.3d 141, 153-54 (Tex. Crim. App. 2001); Morris v. State, 89
S.W.3d 146, 151(Tex. App.-Corpus Christi, no pet.). An abuse of discretion occurs
when the trial court acts arbitrarily or unreasonably, without reference to guiding rules
or principles. Montgomery v. State, 810 S.W.2d 372, 379-80 (Tex. Crim. App. 1990)
(en banc) (op. on reh'g). In other words, an abuse of discretion occurs only when the
trial court's decision is so wrong as to lie outside that zone within which reasonable
persons might disagree. Id. at 380. A trial court has a "limited right to be wrong." 
Id. Our inquiry on appeal is whether the result was reached in an arbitrary or
capricious manner. Id. Therefore, we uphold a trial court's evidentiary ruling if it is
reasonably supported by the record and is correct under any theory of law applicable
to the case. State v. Ross, 32 S.W.3d 853, 855-56 (Tex. Crim. App. 2000) (en
banc); Jones v. State, 833 S.W.2d 118, 125 n.15 (Tex. Crim. App. 1992) (en banc). 
We do not reverse a trial court's evidentiary ruling on a theory of admissibility or
inadmissibility not raised at trial. Martinez v. State, 91 S.W.3d 331, 336 (Tex. Crim.
App. 2002).

2. Preservation of Error

 The complaining party must make a specific objection and obtain a ruling on the
objection. Wilson v. State, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002). The record
must show that the complaining party gave the trial court an opportunity to rule on the
complaint by presenting that complaint to the trial court in a specific and timely
objection. Tex. R. App. P. 33.1(a); (6) Geuder v. State, 115 S.W.3d 11, 13 (Tex. Crim.
App. 2003); Martinez v. State, 98 S.W.3d 189, 193 (Tex. Crim. App. 2003);
Lankston v. State, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992) (en banc). Further,
making the trial court aware of the complaint requires that both the grounds and what
is being objected to be apparent. See Hernandez v. State, 599 S.W.2d 614, 617
(Tex. Crim. App. 1980) (en banc) (op. on reh'g). 

3. Harm

 Even assuming that the trial court abused its discretion in admitting evidence of
the two prior convictions during the guilt-innocence phase of the trial, Hartman is not
entitled to reversal unless she shows that the error was: (1) of constitutional
magnitude; or (2) affected a substantial right. See Tex. R. App. P. 44.2(a), (b). A
violation of rules of evidence that results in erroneous admission of evidence is non-constitutional error. Couchman v. State, 3 S.W.3d 155, 160 (Tex. App.-Fort Worth
1999, pet. ref'd). Under the harmless error standard for non-constitutional error, we
must disregard any error that does not affect a substantial right. Tex. R. App. P.
44.2(b). A substantial right is affected when the error had a substantial and injurious
effect or influence in determining the jury's verdict. King v. State, 953 S.W.2d 266,
271 (Tex. Crim. App. 1997) (citing Kotteakos v. United States, 328 U.S. 750, 776,
(1946)). However, if the error had no or only a slight influence on the verdict, the
error is harmless. Johnson v. State, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

B. The Field Sobriety Test Results

 By her first point of error, Hartman asserts that the results of the horizontal gaze
nystagmus ("HGN"), one-leg stand, and walk-and-turn field sobriety tests were
inadmissible and, thus, unreliable because Trooper Gonzales improperly administered
them. (7) In a sub-issue, Hartman asserts that the trial court improperly denied her
motion to suppress testimony of the HGN test result. The State responds that Trooper
Gonzales's testimony concerning the tests was properly admitted. 

1. The HGN Test Results

 In determining whether a driver is intoxicated, a law enforcement officer with
reason to suspect intoxication may conduct a series of field sobriety tests to aid in
making arrest decisions. See Compton v. State, 120 S.W.3d 375, 376 (Tex.
App.-Texarkana 2003, pet. ref'd). Satisfactory performance of the tests suggests
sobriety, while poor performance can serve as a useful indicator of impairment. Id. 
Both the underlying theory and the technique employed in administering the HGN test
make it a sufficiently reliable indicator of intoxication. Id. at 377 (citing Emerson v.
State, 880 S.W.2d 759, 763, 768-69 (Tex. Crim. App. 1994)). For testimony
concerning a defendant's performance on the HGN test to be admissible, it must be
shown that the witness testifying is qualified as an expert on the HGN test, specifically
concerning its administration and technique. Emerson, 880 S.W.2d at 769. In the
case of a law enforcement official, this requirement will be satisfied by proof that the
officer has received practitioner certification by the State of Texas to administer the
HGN. Id. A witness qualified as an expert on the administration and technique of the
HGN test may testify concerning a defendant's performance on the HGN test, but may
not correlate the defendant's performance on the HGN test to a precise BAC. Id. 

 In this case, Hartman maintains that Trooper Gonzales deviated from the
standard for administering the HGN by conducting it while Hartman faced vehicular
lights and that the result was rendered unreliable and, thus, inadmissible. Trooper
Gonzales testified that Hartman faced traffic when he conducted the HGN test and she
failed the test. He acknowledged that he did not have Hartman turn away from the
oncoming traffic when administering the test, but he was able to determine the
indicator of intoxication-involuntary jerking of the eyes-even when there was no
oncoming traffic. (8) The State maintains that any variations in the administration of the
test does not render the evidence inadmissible or unreliable but, rather, implicates
weight and not admissibility of the evidence.

 Although sobriety tests, when administered under ideal conditions, will generally
serve as valid and useful indicators of impairment, slight variations from the ideal may
have some effect on the evidentiary weight given to the results. Compton, 120
S.W.3d at 378. The accuracy of the HGN test has been estimated at various levels,
depending on such factors as testing conditions and the ability and experience of those
conducting the test, thus taking into account that the test will not be administered in
strict conformity with an officer's training every time it is performed. Id. 
Consequently, any variation in administering the tests, no matter how slight, does not
automatically undermine the admissibility of an individual's poor performance of the
tests. See id. 

 Even assuming Trooper Gonzales deviated from the standard for administering
the HGN test by allowing Hartman to face traffic while performing the test, we
conclude that Hartman has not demonstrated harm. She does not challenge Trooper
Gonzales's competency to administer and interpret the HGN test. Trooper Gonzales
was qualified as an expert to testify regarding the test results. He testified that the
test result was one of many circumstances that led him to conclude she was
intoxicated. Thus, the record shows he used the HGN test results to corroborate his
opinion that Hartman was intoxicated. Further, Hartman admitted to Trooper Gonzales
and to the jury that she consumed an alcoholic beverage before driving. Accordingly,
as to the HGN test, we conclude that Hartman has not shown reversible error. Tex.
R. App. P. 44.2(b); Johnson, 967 S.W.2d at 417; Morris, 89 S.W.3d at 151 ("[I]f
there was error, we conclude it was harmless because the jury was presented with
other evidence sufficient to support the jury's finding of intoxication."). 

2. The Walk-and-Turn and One-Leg Stand Test Results

 Hartman asserts that these tests were rendered unreliable and, thus,
inadmissible because Hartman did not remove her high-heeled shoes in accordance
with performance standards. The State points to evidence of Hartman's high-heeled
shoes at trial and the jury's opportunity to determine whether the heel height affected
the weight to be given the tests. 

 Hartman did not complain either in the motion to suppress or raise a specific
objection and obtain a ruling on the objection when the evidence was offered at trial. 
At the beginning of the suppression hearing, Hartman specifically limited her motion
to the HGN test. We conclude that Hartman forfeited error. See Tex. R. App. P.
33.1(a); Wilson, 71 S.W.3d at 349; Morris, 89 S.W.3d at 150.

 Even assuming Hartman preserved error, we have already concluded the
evidence was legally and factually sufficient to prove the essential element of
intoxication. We did so by excluding evidence of the standard field sobriety test
results and including evidence of Hartman's shoes at trial. Thus, assuming without
deciding that deviation from standards for performing the walk-and-turn and one-leg
stand occurred because Hartman wore high-heeled boots while performing them, we
disregard the error because it does not affect a substantial right. See Tex. R. App. P.
44.2(b); King, 953 S.W.2d at 271. 

3. Disposition

 Because Hartman has not shown reversible error, we overrule her first point of
error. See Tex. R. App. P. 44.2(b). 

C. Testimony Correlating HGN to a Specific BAC

 In her second point of error, Hartman asserts that the trial court erred in
admitting the testimony of Trooper Gonzales correlating results of the HGN test with
the .08 blood-alcohol concentration, a component of intoxication. See Tex. Pen. Code
Ann. § 49.01(2)(A), (B) (Vernon 2003). The State counters that the trial court did not
admit testimony correlating the HGN results to a BAC and that, even if the testimony
admitted was correlating testimony, its admission was harmless error.

 The HGN technique is not a reliable indicator of precise BAC. See Emerson, 880
S.W.2d at 769. A witness may not use the HGN evidence to quantify the defendant's
BAC. Id. 

 Trooper Gonzalez testified during direct examination as follows:

 Q. Based on your training and experience, do you have an opinion as to
whether the defendant's blood alcohol level concentration was above or
below .08?


 A. Be above.


Defense counsel objected on the same ground asserted on appeal and the trial court
overruled the objection. Hartman complains of and points to other inadmissible
testimony as to BAC. However, because she did not present the latter complaint to
the trial court, she has forfeited error. Tex. R. App. P. 33.1; Lankston, 827 S.W.2d at
909. 

 We observe that our legal and factual sufficiency review did not incorporate the
complained-of testimony. We further observe that Hartman does not address harm. 
Even assuming that Trooper Gonzales quantified Hartman's exact BAC based on her
performance on the HGN test, we conclude, in the light most favorable to Hartman,
that the trial court's admission of the testimony "had but a slight effect" on the jury's
verdict and the ruling was, thus, harmless. Johnson, 967 S.W.2d at 417. 

 Accordingly, we overrule Hartman's second point of error.

D. Denial of Judicial Notice of the NHTSA Manual

 In her third point of error, Hartman maintains that the trial court erred in refusing
to take judicial notice of the National Highway Transportation and Safety
Adminstration ("NHTSA") Manual. She argues that the trial court had a mandatory
responsibility to take judicial notice to ensure that the HGN technique was applied
according to the manual. The State counters that the trial court's refusal to take
judicial notice of the instructor's manual was within the zone of reasonable
disagreement and thus not error.

 Judicial notice of adjudicative facts is controlled by Texas Rule of Evidence 201. 
See Tex. R. Evid. 201(b). Rule 201states that a judicially noticed fact must be one not
subject to reasonable dispute in that it is either (1) generally known within the
territorial jurisdiction of the trial court or (2) capable of accurate and ready
determination by resort to sources whose accuracy cannot reasonably be questioned. 
Id. Rule 201 further states that a court shall take judicial notice if requested by a party
and supplied with the necessary information. Tex. R. Evid. 201(d). 

 In this case, defense counsel requested the trial court take judicial notice of "an
instructor's manual which sets up the standardized field sobriety tests as administered
by the [NHTSA] and recognized by the Texas Court of Criminal Appeals [in accord with
Emerson, 880 S.W.2d at 766]." Prior to the request, defense counsel attempted to
adduce evidence from Trooper Gonzales as to the testing requirements, but the trooper
did not recognize the instructor's manual as to standard field sobriety testing. Before
defense counsel requested the trial court take judicial notice, Trooper Gonzales
testified as follows during cross examination:

 Q. I want to show you this book and ask you if you've seen it before? 

 A. Yes, sir, I saw it yesterday.

 Q. Right. I'm going to go ahead and give this to you and help you open it to
a page. Go ahead and open it. 


 A. Yes, sir. 

 Q. This book is also the authentic book that they use to teach the officers; is
that correct?


 A. I guess so. It says, Instructor. I'm not an instructor, so I never see their
book.


 Q. They hide the answers, don't they? 

 A. Yes, sir.

 Q. Would you read this?

 A. Optocokinetic? 

 Q. Yes. 

 [Prosecutor]: Your Honor, I'm going to object to him reading out loud
from a book that is not in evidence, also a book that he says he's not the
instructor, he's never seen this book, he doesn't know this as an
instructor's book, only that that is the title on it. 


 [Defense counsel]: Judge, this is a learned treatise, and an expert
witness will be quizzed upon a learned treatise.


 [Prosecutor]: Only if he recognizes it as being- 


 The Court: Only if he recognizes it, [Defense Counsel]. Objection is
sustained. 


 [Defense counsel]: Your Honor, would you take judicial notice of this
instructor's manual which sets up the standardized field sobriety tests as
administered by [the] National Highway Transportation and Safety
Administration and recognized by the Texas Court of Criminal Appeals?

 

 [Prosecutor]: Your Honor, I'm not sure that book is recognized by the
Court of Appeals. The Court the Appeals will recognize that the tests,
the HGN, the One-Leg Stand, and the Walk-and-Turn, are certified tests. 
The fact whether or not they recognize a book and all the contents in it,
I disagree with you.

 

 [Defense counsel]: In Emerson v. State, the Texas Court of Criminal
Appeals took judicial notice of all the materials involved which were
submitted to the Court.

 

 [Prosecutor]: We don't know what materials those were in that particular
case. 

 

 The Court: I've never seen the book, [defense counsel].

 

 Defense counsel: Okay. 


 The record shows no further discussion or questioning regarding the manual, its
contents, or its admission in evidence. Hartman directs our attention to the appendix
of her appellate brief which contains a "DWI Detection and Standardized Field Sobriety
Testing Student Manual [NHTSA]." 

 Hartman does not complain, nor is it apparent from the context, that Hartman
attempted to obtain a final ruling on the request for judicial notice of the NHTSA
instructor's manual, which is not part of the appellate record. Even so, the trial court
implicitly denied the request to take judicial notice of the NHTSA instructor's manual. 
See Tex. R. App. P. 33.1(a)(2)(A); Reyna v. State, 168 S.W.3d 173, 177 (Tex. Crim.
App. 2005) (stating that the issue is not whether the trial court's ruling is legally
"correct" in every sense but whether the complaining party on appeal brought to the
trial court's attention the very complaint that party is now making on appeal). 

 In this case, we are unable to consider the student manual Hartman appends to
her appellate brief because appellate courts cannot consider items which are not part
of the record from the trial court. See Tex. R. App. P. 33.2, 38.1(j); Ramirez v. State,
104 S.W.3d 549, 551 n. 9 (Tex. Crim. App. 2003) (en banc) (appellate record cannot
be supplemented with evidence not introduced during trial); Rasberry v. State, 535
S.W.2d 871, 873 (Tex. Crim. App. 1976) (documents attached to a pro se brief are
not part of the record and cannot be considered); Gabriel v. State, 973 S.W.2d 715,
719 (Tex. App.-Waco 1998, no pet.) (letter attached to appellate brief not part of
record). Absent the proffered exhibit in question, on this record, we cannot conclude
the trial court abused its discretion by refusing to take judicial notice of the NHTSA
instructor's manual. Montgomery, 810 S.W.2d at 391. 

 Further, Hartman requested the trial court take judicial notice of the instructor's
manual but on appeal argues that Emerson authorizes judicial notice of the "DWI
Detection manual published by the NHTSA." See Emerson, 880 S.W.2d at 768. Rule
201 states that a court shall take judicial notice if requested by a party and supplied
with the necessary information. Tex. R. Evid. 201(d). We cannot conclude that the
trial court was bound by rule 201 to take judicial notice of the instructor's manual
while Hartman attempts to rely on the student manual on appeal. See Reyna, 168
S.W.3d at 177. 

 Further still, if the objection made in the trial court differs from the complaint
made on appeal, a defendant has not preserved any error for review. Thomas v. State,
723 S.W.2d 696, 700 (Tex. Crim. App. 1986) (en banc); Morris 89 S.W.3d at 151. 
Because Hartman requested the trial court take judicial notice of the instructor's
manual but not the student manual she complains of on appeal, she forfeited error. 
See Reyna, 168 S.W.3d at 177. On the same basis, she forfeited error because her
complaint on appeal differs from the complaint at trial. Thomas, 723 S.W.2d at 700. 
Further, Hartman has forfeited error because the student manual attached to her
appellate brief is not evidence. See Rasberry, 535 S.W.2d at 873.

 Accordingly, we overrule Hartman's third point of error.

E. The Prior Convictions

 In her fifth point of error, Hartman asserts that the trial court erred in admitting
as State's exhibits 2 and 3 the certified judgments of the two prior convictions, even
though she had stipulated to both convictions. The State responds that Hartman did
not preserve error.

 At the beginning of the trial, the prosecutor offered and the trial court admitted
in evidence as State's exhibit 1 the parties' stipulation as to the two prior DWI
convictions alleged in the indictment, without objection. Hartman stipulated as to two
prior driving-while-intoxicated (DWI) convictions which elevated the charged offense
to a felony under section 49.09(b) of the Texas Penal Code. Tex. Pen. Code Ann. §§
49.01(2)(A), 49.04(a) (Vernon 2003), § 49.09(b) (Vernon Supp. 2005). The exhibit
demonstrates Hartman's consent to the stipulation and to the trial court's jurisdiction. 
The State then offered and the trial court admitted, without objection, the complained-of exhibits 2 and 3. 

 Essentially, Hartman asserts she was harmed because the evidence permitted
the jury to improperly focus on the previous convictions. However, prior to the State's
calling its first witness, the priors and their certified packets were admitted in evidence
without objection. Because Hartman did not object, she forfeited error. Tex. R. App.
P. 33.1(a); Wilson, 71 S.W.3d at 349. Even assuming she preserved error, Hartman
confessed to the two prior convictions. Thus, she lost the ability to complain and
forfeited any error as to the use of those convictions in the culpability phase of the
trial. See Smith v. State, 158 S.W.3d 463, 465 n.14 (Tex. Crim. App. 2005) (en
banc) (stipulating to the priors to avoid the introduction of damaging evidence arguably
rises to the level of estoppel when it comes to challenging the legitimacy of using
those priors); Potier v. State, 68 S.W.3d 657, 663 (Tex. Crim. App. 2002) (en banc)
(erroneous evidentiary rulings rarely rise to the level of denying the fundamental
constitutional rights to present a meaningful defense). Further, because she stipulated
to the complained-of evidence, Hartman cannot complain of invited error. See
Prystash v. State, 3 S.W.3d 522, 531 (Tex. Crim. App. 1999) (the law of invited error
estops a party from making an appellate error of an action it induced).

 Accordingly, we overrule Hartman's fifth point of error.

VI. CONCLUSION

 Because we overrule all five points of error Hartman raises on appeal, we
affirm the trial court's judgment. 



 ERRLINDA CASTILLO

 Justice

Publish

Tex. R. App. P. 47.2(b).


Opinion delivered and filed

this 3rd day of August, 2006.

1. The indictment alleged that, on or about November 30, 2004, Hartman operated a motor
vehicle in a public place while intoxicated, by not having the normal use of mental or physical faculties
by reason of alcohol. The indictment alleged two jurisdictional prior convictions for the purpose of
enhancement (occurring on August 27, 1996, and December 15, 1998).
2. Trooper Gonzalez testified that Hartman was one of two drivers he stopped at the same time
for speeding at over eighty miles an hour. After he made initial contact with Hartman and observed the
bottle of vodka in the front seat, he proceeded to ticket the driver of the second vehicle. He testified
that when he returned to Hartman, he observed the vodka bottle was moved to the rear floorboard. 
3. There are three grades of the offense of driving while intoxicated. The difference between the
grades is set by the number of prior convictions for certain intoxication-related offenses. The offense
of driving while intoxicated, without any alleged prior intoxication-related convictions, is a Class B
misdemeanor. Tex. Pen. Code Ann. § 49.04(b) & (c) (Vernon 2003). If the State can prove a defendant
had previously been convicted of one offense related to operating a motor vehicle, aircraft or watercraft
while intoxicated, the driving while intoxicated offense becomes a Class A misdemeanor. Tex. Pen. Code
Ann. § 49.09(a) (Vernon Supp. 2005). If the State can prove a defendant had "previously been
convicted two times of an offense" related to operating a motor vehicle, aircraft or watercraft while
intoxicated, the driving while intoxicated offense becomes a felony of the third degree. Tex. Pen. Code
Ann. § 49.09(b) (Vernon Supp. 2005). The prior intoxication-related offenses, whether they are felonies
or misdemeanors, serve the purpose of establishing whether the instant offense qualifies as felony
driving while intoxicated. Gibson v. State, 995 S.W.2d 693, 695-96 (Tex. Crim. App. 1999). The prior
intoxication-related offenses are elements of the offense of driving while intoxicated. Id. at 696. They
define the offense as a felony and are admitted into evidence as part of the State's proof of its
case-in-chief during the guilt-innocence stage of the trial. Id.
4. A hypothetically correct jury charge would not simply quote from the controlling statute. 
Gollihar v. State, 46 S.W.3d 243, 254 (Tex. Crim. App. 2001). Its scope is limited by "the statutory
elements of the offense . . . as modified by the charging instrument." Fuller v. State, 73 S.W.3d 250,
254 (Tex. Crim. App. 2002) (Keller, P.J., concurring) (quoting Curry v. State, 30 S.W.3d 394, 404
(Tex. Crim. App. 2000)). 
5. See note 4. 
6. As a prerequisite to presenting a complaint for appellate review, the record must show that:


(1) the complaint was made to the trial court by a timely request, objection, or motion
that:


 (A) stated the grounds for the ruling that the complaining party sought
from the trial court with sufficient specificity to make the trial court
aware of the complaint, unless the specific grounds were apparent from
the context; and


 (B) complied with the requirements of the Texas Rules of Civil or
Criminal Evidence or the Texas Rules of Civil or Appellate Procedure;
and

 

 (2) the trial court:


 (A) ruled on the request, objection, or motion, either expressly or
implicitly; or


 (B) refused to rule on the request, objection, or motion, and the
complaining party objected to the refusal.


Tex. R. App. P. 33.1(a)(1). 
7. In her pretrial motion to suppress, Hartman's principal argument against allowing the results
of the HGN test to be introduced into evidence was that Trooper Gonzales incorrectly performed the
HGN test without specifying the claimed deficiency. 
8. A motion to suppress evidence is nothing more than a specialized objection to the admissibility
of evidence. Galitz v. State, 617 S.W.2d 949, 952 (Tex. Crim. App. 1981) (en banc); Wilson v. State,
857 S.W.2d 90, 94 (Tex. App.-Corpus Christi 1993, pet. ref'd). Trooper Gonzales testified at the
pretrial suppression hearing. We are authorized to consider evidence adduced at that hearing. See
Rachal v. State, 917 S.W.2d 799, 809 (Tex. Crim. App. 1996) (en banc) (holding that, where the
parties re-litigate the suppression issue during the trial on the merits, the relevant testimony is
appropriate in our review).