

**NUMBER 13-06-660-CR**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**TRACY THOMAS RHODES,** **Appellant,**

**v.**

**THE STATE OF TEXAS,** **Appellee.**

**On appeal from the 36th District Court of Aransas County, Texas.**

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Yañez and Benavides
Memorandum Opinion by Justice Benavides**

Appellant, Tracy Rhodes, was charged with driving while intoxicated ("DWI"), a third-degree felony. *See* TEX. PENAL CODE ANN. § 49.04 (Vernon 2003). After a jury trial, Rhodes was convicted of his third DWI violation. *See id.* §§ 12.42, 49.09 (Vernon Supp. 2007). The trial court imposed eight years' imprisonment and a $500 fine. By two issues, Rhodes challenges the legal and factual sufficiency of the evidence supporting the

conviction. We affirm.

## I. BACKGROUND

According to the witnesses at trial, Rhodes went into a convenience store for directions around 12:30 a.m. on February 11, 2006. The store clerk, David Anderson, noticed that Rhodes had bloodshot eyes and that his face was red. Another store clerk, Nigel Bittle, observed that Rhodes was talking unusually loudly on the cell phone, looked irritated, slurred his speech, and staggered his steps around the store. Both clerks were trained on how to identify intoxicated persons. Both clerks testified that when they first saw Rhodes, they anticipated he would be a problem customer.

Anderson testified that he offered to help Rhodes look up the destination on a map. Suspecting Rhodes was intoxicated, Anderson asked Rhodes if he knew it was illegal to be intoxicated in public. At that point, Rhodes turned around and left the store.

Bittle testified that Rhodes had trouble entering his car when leaving the store, and he almost backed into a gas pump approximately three car lengths away from the parking lot. Bittle got in his car and followed Rhodes for a while. He then called the police. Rhodes was "swerving into another lane and off the [Fulton Beach] road towards the water," then "stopped dead in the road" and made a four-point u-turn[1] in the middle of the road, according to Bittle's testimony. Bittle also testified that Rhodes was "intoxicated, alcohol or otherwise," but he ruled out the possibility of drug intoxication.

Officer David Rollins responded to the police call reporting a possible drunk driver. He testified that Rhodes "ran off the side of the road" at the sight of the patrol vehicle,

---

[1] A four-point u-turn as described by Bittle was when Rhodes turned, backed up, turned and backed up again, and finally made the turn.

came back on the road, and then "jotted" into a nearby parking lot without using the turn signal. After Officer Rollins stopped Rhodes, he smelled alcohol on Rhodes's breath and body. He testified that "[Rhodes's] eyes were bloodshot, and [his] speech was slurred." Officer Rollins also found an open beer can inside the vehicle between the driver seat and the console.

Officer Rollins conducted three field-sobriety tests. During the Horizontal Gaze Nystagmus ("HGN"), Rhodes's eyes were "fluttering [and] bouncing" and showed "six clues [of intoxication], three in each eye." Next, Officer Rollins conducted a walk-and-turn test. Rhodes was " unsteady on his feet," could not follow the instructions, and was "using his arms to balance." There were seven clues of intoxication, where normally, according to Officer Rollins, "two clues [would be] sufficient to conclude that [a driver] is ninety-seven percent intoxicated." Finally, Officer Rollins conducted a one-leg stand. Rhodes "fell to his side and could not complete the task."

The backup officer, Mario Garcia, was close enough to observe the walk-and-turn and the one-leg stand tests. He testified that Rhodes's clothes were in disarray, that Rhodes slurred his speech, and that Rhodes performed poorly on the tests. Officer Garcia also smelled alcohol on Rhodes.

Because Officer Rollins's patrol video camera malfunctioned, Officer Garcia used his camera to record the interview process. The video showed that the weather was windy and that Rhodes was not able to maintain balance during the tests. Officer Rollins testified that the wind could affect Rhodes's balance to some degree; however, Officer Rollins was also looking for divided attention, which was another clue of intoxication he derived from the one-leg stand test. Both of the officers concluded that Rhodes was intoxicated and

3

arrested him.

At the jail, Rhodes appeared to understand the statutory warnings[2] given by the officers, but he refused to take a breath test. At trial, Rhodes stipulated to two prior convictions for DWI. The jury convicted Rhodes of felony DWI, and this appeal ensued.

## II. SUFFICIENCY OF EVIDENCE

### A.    Standard of Review

In evaluating the legal sufficiency of evidence, we view the evidence "in the light most favorable to the verdict" and determine whether any "rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt." *Escamilla v. State*, 143 S.W.3d 814, 817 (Tex. Crim. App. 2004); *see also Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

The legal sufficiency of the evidence is measured against the elements of the crime presuming that the trial court gave the correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). An acquittal is only reserved for a situation where there is an actual failure in the State's proof. *Id.* at 240; *Hartman v. State*, 198 S.W.3d 829, 836 (Tex. App.–Corpus Christi 2006, pet. dism'd).

In evaluating the factual sufficiency of the evidence, courts view the evidence "in a neutral light." *Vodochodsky v. State*, 158 S.W.3d 502, 510 (Tex. Crim. App. 2005); *Zuliani v. State*, 97 S.W.3d 589, 593-94 (Tex. Crim. App. 2003). "Evidence can be factually insufficient in one of two ways: (1) when the evidence supporting the verdict is so weak that the verdict seems clearly wrong and manifestly unjust, and (2) when the supporting

---

[2] TEX. TRANSP. CODE ANN. § 724.015(1) (Vernon Supp. 2007) ("if the person refuses to submit to the taking of the specimen, that refusal may be admissible in the subsequent prosecution").

4

evidence is outweighed by the great weight and preponderance of the contrary evidence so as to render the verdict clearly wrong and manifestly unjust." *Roberts v. State*, 220 S.W.3d 521, 524 (Tex. Crim. App. 2007). We are permitted to substitute our judgment for the jury's on the question of witness credibility and weight of evidence determinations, "albeit to a very limited degree." *See Marshall v. State*, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006) (quoting *Watson v. State*, 204 S.W.3d 404, 417 (Tex. Crim. App. 2006)). Nevertheless, our review should be deferential with a "high level of skepticism about the jury's verdict required before a reversal can occur." *Roberts*, 220 S.W.3d at 524.

**B.    Applicable Law**

"[A] person commits an offense if that person is intoxicated while operating a motor vehicle in a public place." TEX. PENAL CODE ANN. § 49.04(a). If the State can prove that a defendant has previously been convicted "two times of any other offense relating to the operating of a motor vehicle while intoxicated," the Driving While Intoxicated offense at trial becomes a felony of the third degree. *Id.* § 49.09(b)(2).

"Intoxicated" is defined as "not having the normal mental or physical faculties by reason of introduction of alcohol . . . into the body." TEX. PENAL CODE ANN. § 49.01(2)(A) (Vernon 2003). Therefore, a hypothetically correct jury charge would ask the jury to find that Rhodes was (1) operating a motor vehicle, (2) in a public place, (3) while intoxicated, (4) due to introduction of alcohol into his body, and (5) was previously convicted two times of Driving While Intoxicated. *Id.* §§ 49.04(a), 49.09(b)(2); *see Malik*, 953 S.W.2d at 240; *Flores v. State*, 139 S.W.3d 61, 66 (Tex. App.–Texarkana 2004, pet. ref'd); *see also Cason v. State,* No. 13-04-301–CR, 2005 Tex. App. LEXIS 5651, at *5 (Tex. App.–Corpus Christi

5

July 21, 2005, no pet.) (mem. op.) (not designated for publication).

Evidence of intoxication may include: (a) slurred speech, (b) bloodshot eyes, (c) the smell of alcohol on the person, (d) unsteady balance, (e) a staggered gait, or (f) the smell of alcohol on the breath. *See Cotton v. State*, 686 S.W.2d 140,142 n.3 (Tex. Crim. App. 1985); *Valles v. State*, 817 S.W.2d 138, 141 (Tex. App.–El Paso 1991, no pet.) (citing *Annis v. State*, 578 S.W.2d 406, 407 (Tex. Crim. App. 1979)). The jury may also consider the refusal to take a breath test as evidence of intoxication. TEX. TRANSP. CODE ANN. § 724.015; *Zavala v. State*, 89 S.W.3d 134, 138 (Tex. App.–Corpus Christi 2002, no pet.) (citing *Bright v. State*, 865 S.W.2d 135, 157 (Tex. App.–Corpus Christi 1993, pet. ref'd)).

## C.     Legal Sufficiency Analysis

By his first issue, Rhodes argues that the two convenience store witnesses had an expectation that he was intoxicated; therefore, he reasons, their testimony is unreliable and does not prove his lack of physical or mental faculties. Even if we agreed with this argument, it does not undermine the legal sufficiency of the evidence in this case. The arresting officer's testimony was sufficient to establish the element of intoxication. *See Hartman*, 198 S.W.3d at 835 (citing *Whisenant v. State*, 557 S.W.2d 102, 105 (Tex. Crim. App. 1977) (testimony of police officer is sufficient to establish intoxication)).

*Hartman,* in particular, is analogous to this case. Hartman was arrested for DWI. *Id.* at 831. At trial, a state trooper testified that Hartman's eyes were glassy and bloodshot and that she lacked balance. *Id.* at 836. He testified that he smelled a strong odor of alcohol from Hartman and her vehicle, and he conducted field sobriety tests. *Id.* The backup trooper observed Hartman stumble during the tests and found a half-empty bottle

6

of liquor in the vehicle. *Id.* Both troopers concluded that Hartman was intoxicated based on their experience, training, and observations at the scene. *Id.*

Hartman argued that the field sobriety tests were unreliable because of the effects of passing traffic, the cold weather, and her high-heeled boots. *Id.* at 835. While we certainly appreciated the difficulties posed by fashionable shoes, we nevertheless held in *Hartman* that the evidence was legally sufficient to prove the essential elements of DWI based on the observations of the troopers. *Id.*

The same is true here. Viewed in the light most favorable to the verdict, a rational trier of fact could have found the element of intoxication beyond a reasonable doubt. The officers found a half-empty beer can in Rhodes's car, and they smelled alcohol from both his person and breath. His eyes were bloodshot, and he slurred his speech. Both Officer Rollins and Officer Garcia testified to Rhodes's physical manifestations of intoxication. Additionally, Rhodes refused to give a breath specimen. Accordingly, we overrule Rhodes's first issue.

## D.    Factual Sufficiency Analysis

By his second issue, Rhodes challenges the factual sufficiency of the evidence. Rhodes again disputes that he was intoxicated and contends the store clerks were unreliable witnesses because they had the expectation of his intoxication before they even made contact with him. However, the jury heard individual testimony about all six of the indicators of intoxication discussed above. *See Cotton,* 686 S.W.2d at 142 n.3. These indicators were bloodshot eyes, slurred speech, staggered steps in the store, a lack of balance during the sobriety tests, and the odor of alcohol from Rhodes's breath and

7

person.  Additionally, Rhodes's refusal to take the breath test is also evidence of intoxication.  *Zavala,* 865 S.W.3d at 138.

Nevertheless, Rhodes argues that the wind on the night of the arrest played some role in his lack of balance during the tests.  As we have already noted, we rejected this very argument in *Hartman.*    198 S.W.3d at 836-37.  The police officers did not base their conclusions solely on the sobriety tests.  *Id.* at 836 ("Importantly, Hartman does not address the evidence of the strong odor of alcohol . . . .").  Evidence of the other indicators—exclusive of Rhodes's poor performance on the sobriety tests—was not so weak that the verdict seems clearly wrong and manifestly unjust, and it is not outweighed by the contrary evidence.  *See Roberts*, 220 S.W.3d at 524; *Hartman*, 198 S.W.3d at 836-37.  Accordingly, we overrule Rhodes's second issue.

### III. CONCLUSION

Because we conclude the evidence was legally and factually sufficient to support the verdict, we overrule Rhodes's issues and affirm the judgment.

GINA M. BENAVIDES,
Justice

Do not publish.  TEX. R. APP. P. 47.2(b).

Memorandum Opinion delivered and
filed this the 26th day of June, 2008.

8