

# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

## NO. 02-12-00176-CR

GEORGE W. BROSAM                                                 APPELLANT

V.

THE STATE OF TEXAS                                                     STATE

----------

## FROM COUNTY COURT AT LAW NO. 1 OF WICHITA COUNTY

----------

## MEMORANDUM OPINION[1]

----------

## I. INTRODUCTION

Appellant George W. Brosam appeals his conviction for driving while intoxicated (DWI) resulting from his involvement in a one-vehicle accident. In one point, Brosam argues that the trial court erred by admitting a medical report that was generated at the hospital after the arresting officer took him there prior

---

[1]*See* Tex. R. App. P. 47.4.

to booking without offering him an opportunity to confront those responsible for the report's content. We will affirm.

## II. BACKGROUND

Texas Department of Public Safety Trooper Jerod Hutchins responded to a one-vehicle-accident dispatch at roughly 3:30 a.m., September 18, 2009. When Hutchins arrived, there were already sheriff's deputies on the scene. According to Hutchins, a truck belonging to Brosam appeared to have left the roadway and come to rest in a field roughly fifty feet away from the roadway. Hutchins testified that the field was muddy and that for Brosam's truck to travel through an intervening ditch and end up the distance it did from the roadway, he would have had to have been speeding. Hutchins also said that Brosam had left the roadway near a curve, leaving "a lot of the traffic barrels, the big large orange traffic barrels, scattered out all over the ditch." Hutchins explained that there was a large, well-lit warning sign preceding the curve which read, "Slow down, curve ahead."

Hutchins encountered Brosam near the truck. By Hutchins's account, Brosam smelled of alcohol, had bloodshot eyes, slurred his speech, and appeared unable to keep his balance. As Hutchins escorted Brosam from the field to the roadway, Brosam lost his balance, slipped and fell, and hit the back of his head on a concrete culvert. Hutchins said that because of the impact to the head, he did not perform standard field-sobriety tests. Hutchins asked Brosam where he was coming from and whether he had drunk any alcohol prior to

2

driving. According to Hutchins, Brosam said that he had left a bar shortly before the accident, and Brosam's response to the question of whether he had drunk any alcohol prior to the accident was either "[a]s much as I could" or "all I could." Hutchins said that because of the totality of circumstances, including the nature of the accident and the time of morning, which according to him is when most DWI-related accidents occur, he arrested Brosam for DWI. Hutchins's in-car video camera captured a portion of this encounter. It also captured footage from inside the patrol vehicle after Hutchins handcuffed Brosam and placed him into it.

A redacted portion of the video was played for the jury. In part of the video, Brosam can be heard in the patrol vehicle asking Hutchins whether he had a cold beer. Other statements Brosam can be heard saying include, "Why, hell, who needs to sober up?", "I'm drunk tonight. Had a wreck," "Drank a case of beer tonight," and "[My behavior] is not an obnoxious drunk, is it? It's a happy drunk." Brosam's conversation with Hutchins is also filled with other nonsensical statements, a plethora of profanities directed at his ex-wife and public officials, and other statements regarding his level of intoxication.

Instead of taking Brosam directly to booking, Hutchins said that he took Brosam to the hospital because it is the Department's policy that any time an arrestee is "in a crash, we take them there." While at the hospital, Hutchins read Brosam standard *Miranda* warnings. Hutchins asked Brosam if he understood his rights and whether he was willing to speak with him. Brosam acknowledged that he understood his rights, signed a written waiver, and spoke again with

3

Hutchins about the accident. Brosam's response to whether he had drunk any alcoholic beverages prior to the accident was that he had begun drinking the previous afternoon and that he had drunk a "6-pack of Tall Boys." Brosam refused to give a blood sample, and he also refused any assistance from hospital staff.

While Brosam was still at the hospital, the hospital staff generated a medical report regarding his visit. Over Brosam's objection, the trial court admitted this report at trial as a business record with no sponsoring witness available for cross-examination. A jury returned a verdict of guilty, and the trial court sentenced him to ninety days in jail, but it suspended the imposition of the sentence and placed him on community supervision for twelve months. This appeal followed.

### III. DISCUSSION

In his sole point, Brosam argues that the trial court erred by admitting the medical report prepared by the hospital staff with no opportunity for him to cross-examine the pertinent hospital staff. Brosam's argument is that because it is the Department's policy to take arrestees who have been in an accident to the hospital and because the Department knows that a medical report will be generated and later used at trial, the report itself is an extension of the Department's investigation and thus the report is testimonial under *Crawford* and its progeny. *See Crawford v. Washington*, 541 U.S. 36, 76, 124 S. Ct. 1354,

4

1378 (2004). Thus, according to Brosam, the trial court erred by admitting the record over his objection.

The State responds first that Brosam's objection at trial was too general and insufficient to preserve his complaint for appeal.[2] The State also argues that even if Brosam preserved this point for appeal, the medical report is non-testimonial in nature and thus the trial court did not err by admitting it at trial. We will assume without deciding that Brosam has preserved this complaint for our review. We will also assume without deciding that the trial court erred by admitting the medical report over Brosam's *Crawford* objection. We conclude, however, that even under these assumptions, the admission of the medical report was harmless.

A Confrontation Clause violation is constitutional error subject to a harm analysis under Rule 44.2(a) of the Texas Rules of Appellate Procedure. *Langham v. State*, 305 S.W.3d 568, 582 (Tex. Crim. App. 2010). Under Rule 44.2(a), we must reverse the trial court's judgment unless we determine beyond

---

[2]The State's argument that Brosam failed to preserve this argument for our appeal is predicated on its limited portrayal of the record. The State suggests in its briefing that Brosam's objection was only to a few sentences, and the State latches onto one sentence in that paragraph. But the colloquy between the trial court, the State, and Brosam regarding his objection spanned multiple pages in the record, including a bench conference outside the presence of the jury, a recess so that the parties could research the topic, and a post-recess conference where both parties gave arguments in support of their positions. Given our holding, we need not address the State's claim that Brosam failed to preserve this error, but we do note that the objection was much more involved than the recited portion of the record the State suggests in its briefing.

5

a reasonable doubt that the error did not contribute to Brosam's conviction or punishment. *See* Tex. R. App. P. 44.2(a). We consider the following factors in determining whether constitutional error under *Crawford* may be declared harmless beyond a reasonable doubt: (1) how important the out-of-court statement was to the State's case, (2) whether the statement was cumulative of other evidence, (3) the presence or absence of evidence corroborating or contradicting the out-of-court statement on material points, and (4) the overall strength of the State's case. *Langham*, 305 S.W.3d at 582.

In conducting a Rule 44.2(a) harm analysis, we do not focus on the propriety of the jury's verdict. *Id.* Nor does our analysis turn on whether, excluding the improperly admitted evidence, the remaining evidence was legally sufficient to convict. *Id.* The *Langham* court explained the proper harm analysis as follows:

> [T]he question for the reviewing court is not whether the jury verdict was supported by the evidence. Instead, the question is the likelihood that the constitutional error was actually a contributing factor in the jury's deliberations in arriving at that verdict—whether, in other words, the error adversely affected the integrity of the process leading to the conviction. In reaching that decision, the reviewing court may also consider, in addition to the factors listed above, *inter alia*, the source and nature of the error, to what extent, if any, it was emphasized by the State, and how weighty the jury may have found the erroneously admitted evidence to be compared to the balance of the evidence with respect to the element or defensive issue to which it is relevant. With these considerations in mind, the reviewing court must ask itself whether there is a reasonable possibility that the *Crawford* error moved the jury from a state of non-persuasion to one of persuasion on a particular issue. Ultimately, after considering these various factors, the reviewing court must be able to declare itself satisfied, to a level of confidence beyond a reasonable doubt, that the error did not contribute to the conviction before it can affirm it.

6

*Id.* (quoting *Scott v. State*, 227 S.W.3d 670, 690–91 (Tex. Crim. App. 2007)).

The application of these factors in the instant case leads us to conclude beyond a reasonable doubt that the admission of the medical report did not contribute to Brosam's conviction or punishment. *See* Tex. R. App. P. 44.2(a); *Langham*, 305 S.W.3d at 582.

We have reviewed the medical report, and the only information in the report that could possibly be of significance to the State's case is that Brosam admitted to being a habitual drinker, and he refused treatment for any possible head injury. The majority of the report consists of basic information and biostatistics regarding Brosam's health at the time he was in the hospital, including his height, weight, and blood pressure.

Regarding how important the medical report was to the State's case, the report was not central to it. According to the State's stated purpose at trial, the State introduced the report to rebut Brosam's position that he was not intoxicated but rather his behavior was due to head injury—the report states that Brosam had no complaints about his head when he arrived at the hospital. The State mentioned this fact once to the jury in closing arguments. Brosam's attorney, however, implored the jury multiple times during closing arguments to examine the medical report and determine that Brosam was not intoxicated at the time he would have been driving.

Furthermore, this information was cumulative. By the time the report was introduced at trial, Hutchins had already testified that Brosam refused treatment at the hospital. Hutchins's testimony regarding his interview with Brosam also corroborated the report's entry that Brosam habitually consumed alcohol.

Most of all, the State had an overwhelmingly strong case against Brosam. The elements of DWI are satisfied with a showing that "the person is intoxicated while operating a motor vehicle in a public place." Tex. Penal Code Ann. § 49.04(a) (West Supp. 2012). Brosam did not dispute at trial that he operated a motor vehicle in a public place; rather, he challenged only that he was intoxicated. The State's case of Brosam's intoxication was strong. Hutchins testified that when he arrived at the scene, Brosam smelled of alcohol and possessed bloodshot eyes, slurred speech, an unsteady gate, and a lack of balance. Hutchins said that these factors, coupled with how and when the accident occurred, all led him to believe that Brosam was intoxicated. *See Hartman v. State*, 198 S.W.3d 829, 832 (Tex. App.—Corpus Christi 2006, pet. struck) (reasoning that testimony of an officer that a person is intoxicated provides sufficient evidence to establish the element of intoxication).

Furthermore, the jury watched videotape from Hutchins's in-car camera, in which Brosam himself declared multiple times that he was "drunk," that he had drunk copious amounts of beer that night, that he had "[g]ot[ten] drunk. Had a wreck," and he even asked Hutchins during the ride to the hospital if he had a cold beer in the patrol car, indicating that he wanted to consume one. This

8

evidence of Brosam's intoxication is compelling. *See Lancaster v. State*, 772 S.W.2d 137, 139 (Tex. App.—Tyler 1988, pet. ref'd) ("A videotape showing the condition of a DWI defendant minutes after his arrest is evidence, particularly relevant, demonstrative, and compelling.").

In addition to Brosam's multiple admissions to being intoxicated, evidence shows that he was involved in a one-vehicle accident because he failed to adhere to a large, well-lit construction sign indicating that a curve was ahead and instructing drivers to slow down. The State's evidence indicated that instead of driving slow, Brosam was speeding at the time his vehicle surged through large construction barrels, a ditch, and roughly fifty feet of muddy field before coming to a stop. *See Kuciemba v. State*, 310 S.W.3d 460, 462 (Tex. Crim. App. 2010) ("Being intoxicated at the scene of a traffic accident in which the actor was a driver is some circumstantial evidence that the actor's intoxication caused the accident, and the inference of causation is even stronger when the accident is a one-car collision with an inanimate object."). And the jury was free to consider, as the State stressed, that Brosam refused to provide a blood sample. *See State v. Marrs*, 104 S.W.3d 914, 919 (Tex. App.—Corpus Christi 2003, no pet.) ("A refusal or purported refusal to take a breath or blood test, like any other evidence, can be admitted as relevant evidence.").

Given the volume of evidence that the State presented regarding Brosam's intoxication, considering that the medical report contained cumulative evidence that was largely insignificant to the State's case, and even assuming that the trial

9

court erred by admitting the report, we conclude beyond a reasonable doubt that the error did not contribute to Brosam's conviction or punishment.  *See* Tex. R. App. P. 44.2(a); *Langham*, 305 S.W.3d at 582.  We overrule Brosam's sole point.

## IV. Conclusion

Having overruled Brosam's sole point on appeal, we affirm the trial court's judgment.

BILL MEIER
JUSTICE

PANEL:  GARDNER, MEIER, and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  July 11, 2013