Michelle Chamberlain LIVELY
f/k/a Michelle Chamberlain
Gilley, Appellant,

v.

Robert G. BLACKWELL,
M.D., Appellee.

No. 12–00–00004–CV.

Court of Appeals of Texas,
Tyler.

Jan. 31, 2001.

Rehearing Overruled March 19, 2001.

George Chandler, Darrin Walker, for appellant.

Don Kent, Ken Good, for appellee.

Panel consisted of DAVIS, C.J., WORTHEN, J., and GRIFFITH, J.

WORTHEN, Justice.

Michelle Chamberlain Lively ("Lively") brought a medical malpractice action against Robert G. Blackwell, M.D. ("Blackwell"), alleging negligence in the performance of a laparoscopy procedure and in the postoperative care provided to her. Pursuant to a jury verdict, the trial court rendered judgment in favor of Blackwell. Lively brings four issues on appeal. We affirm.

## I. BACKGROUND

In June of 1994, Blackwell examined Lively and found that she had an ovarian cyst. Blackwell recommended a diagnostic laparoscopy procedure to evaluate the cyst, which he thereafter performed at Trinity Valley Medical Center in Palestine, Texas. Although Lively's initial laparoscopy procedure seemed uneventful, postoperatively she developed serious complications resulting from internal bleeding. A second surgery was necessary to stop the bleeding, and according to Lively, several additional surgeries were necessary to repair the resulting damage. Lively alleged at trial that Blackwell was negligent in closing the initial surgery when he knew or should have known that Lively was still bleeding internally. The evidence as to whether or not Lively was still bleeding when Blackwell closed the incision was contradictory. Blackwell testified that there was no bleeding, but Don Hill, the nurse anesthetist who attended the surgery, testified that the monitor showed the "misting of blood" just before Blackwell closed the incision. Blackwell admitted that if there was significant bleeding prior to closing and he failed to stop it, such a failure to act would be negligence.

During the procedure, a video camera projected internal images of the procedure on a television monitor in the operating room. The equipment also had a recording capability so the images shown on the monitor could be recorded. The physician made the decision whether or not to make such a recording. Blackwell concedes that there was an attempt to make a videotape of Lively's operation and that he maintained the videotape in his office. However, when he produced the videotape in response to a discovery request from Lively, it was blank.

In September of 1996, Lively filed suit against Blackwell. In addition to the allegations of negligence referred to above, Lively also alleged that Blackwell had acted improperly by destroying the videotape of the surgical procedure at issue. Prior to jury selection, Blackwell requested that the trial court prevent Lively from presenting evidence concerning the alleged destruction of the videotape. The trial judge determined that he could not rule on the request without hearing the evidence Lively sought to introduce. After the first day of testimony, Lively presented evidence, outside the presence of the jury, concerning her allegations of the improper destruction of evidence. Lively first presented the testimony of her expert Harold Miller, M.D. ("Miller"). Miller testified concerning the information contained in Lively's hospital records. He testified that Lively was charged for a VHS tape, a video camera and a VCR, and a drape that covers a TV monitor. He opined that a tape made of the laparoscopy performed on Lively would be part of the hospital's records, and that if a doctor removed the videotape, it would be the doctor's duty to preserve it. On cross-examination, however, Miller acknowledged that if the hospital did not have a policy regarding videotapes

and the decision of whether to leave the videotape at the hospital or maintain it at the doctor's office was left to the individual doctor, it would not be improper for Blackwell to maintain the tape of the laparoscopy at his office. Miller also acknowledged that simply because there is an image on a television monitor does not necessarily mean that anything is being taped onto the videotape. Further, Miller conceded that if video equipment is hooked up incorrectly, the tape would not come out and that one would not know this until the tape was viewed.

Lively also presented portions of Blackwell's deposition testimony. Blackwell testified that he maintained the tape of the procedure at his office and that he gave the tape to his lawyer in response to a discovery request from Lively. He stated that he had not viewed the videotape prior to turning it over to his attorney. In addition, Lively introduced a response to one of her requests for production wherein Blackwell stated that the tape of the procedure was blank. Finally, Lively presented the deposition testimony of Skeet Todd ("Todd"), who was designated by Trinity Valley as the person with knowledge of videotaped procedures in June of 1994. Todd testified that approximately 100 endoscopic[1] procedures were performed at Trinity Valley in 1994 and that about forty percent of such procedures were videotaped. He further testified that of those forty percent, he could recall two occasions, including the laparoscopy at issue, where a physician attempted to record the procedure, but the video came out blank. He also stated that most of the videotapes were never viewed. Additionally, Todd testified that Trinity Valley does not have a policy regarding the maintenance of videotapes.

1. Apparently, a laparoscopy is a type of endo- scopic procedure.

As his sole basis for the exclusion of evidence concerning the alleged destruction of the videotape, Blackwell argued, in essence, that the issue of whether spoliation [2] occurred is a question of law for the court to decide. Blackwell contended that because Lively had failed to make a "prima facie" showing that the procedure was actually recorded and that Blackwell intentionally or negligently destroyed evidence, the court should not allow before the jury any evidence of the circumstances surrounding the making of the videotape and the eventual discovery that the tape was blank. After hearing the proffered evidence and argument of counsel, the trial court stated: "The objection will be sustained until there is anything more that makes me think something's been destroyed. I'm not going to allow it before the jury." At the charge conference, Lively requested that the trial court instruct the jury that Blackwell had negligently or intentionally destroyed the videotape and that the jury could infer that the tape would have been harmful to Blackwell. The trial court refused to provide this instruction to the jury.

## II. SPOLIATION

### A. *Exclusion of Evidence*

In Lively's first three issues, she argues that the trial court erred by excluding evidence concerning her allegations of the improper destruction of evidence. Lively contends that the videotape of the procedure could have resolved the pivotal issue of whether bleeding was shown on the monitor at the time Blackwell closed the incision in her abdomen. Further, she asserts that the evidence discussed above was sufficient to enable the jury to find that Blackwell had spoliated, *i.e.*, improperly destroyed, the videotape. Thus, according to Lively, the judge erred in refusing to allow the jury to hear the evidence. Put differently, Lively asserts that whether spoliation occurred or not is a fact question for the jury and that the trial judge improperly usurped the jury's function by resolving the factual disputes related to the evidence of alleged spoliation.

In response, Blackwell contends, as he did at trial, that the evidence at issue was properly excluded because whether a party has improperly destroyed evidence is a question of law for the trial court to determine. Additionally, he argues that there was no evidence the procedure was actually recorded onto the videotape or that Blackwell erased the videotape if the procedure was recorded. He contends that in light of the evidence that was presented to the trial court, the most likely explanation for the blank videotape is that the video equipment was set up incorrectly. Blackwell also argues that since the hospital did not have a policy regarding the maintenance of videotapes, there was nothing improper about Blackwell maintaining the tape at his office.

We disagree with Blackwell's assertion that evidence concerning the videotape was inadmissible because spoliation is a question of law for the trial court. This assertion derives primarily from Justice Baker's concurring opinion in *Trevino v. Ortega*, 969 S.W.2d 950 (Tex.1998).[3] Assuming that Blackwell has correctly stated Justice Baker's position, we note that in *Malone v. Foster*, 977 S.W.2d 562 (Tex. 1998), a case decided the same day as *Trevino*, the Texas Supreme Court de-

---

**2.** Spoliation is the improper destruction of evidence. *Whiteside v. Watson*, 12 S.W.3d 614, 621 (Tex.App.—Eastland 2000, pet. denied).

**3.** In *Trevino*, the Texas Supreme Court held that spoliation of evidence is not an independent tort.

clined to adopt this position when given the opportunity to do so.

In *Malone*, the appellant fell in his hospital room. In compliance with hospital policy, a nurse filled out an incident report. However, the report was destroyed pursuant to the hospital's incident report retention policy. *Id.* at 563. On appeal, the appellant argued that the trial court erred by excluding evidence of the destruction of the hospital report. The appellant contended that such evidence would have allowed the jury to infer that the incident report was unfavorable to the hospital. In considering the appellant's contention, the court did not conclude that evidence of spoliation was inadmissible because it was a matter of law for the trial court to decide. Rather, the court noted that "[l]ike any other question of admissibility of evidence, the exclusion or admission of [testimony concerning the destruction of the incident report] is an issue within the trial court's discretion." *Id.* at 564 (citing TEX.R. EVID. 104(a)). The court then determined that the trial court did not abuse its discretion in excluding the evidence because of other evidence involving the incident which was available to the appellant. *Id.* Based on the holding in *Malone*, we conclude that spoliation is not an issue exclusively reserved to the trial court as a question of law. Contrary to Lively's assertion, however, we also conclude that the admissibility of evidence concerning spoliation is within the trial court's discretion. In other words, a trial court may properly exclude evidence of alleged spoliation without improperly usurping the jury's fact-finding role. *Id.;* TEX.R. EVID. 104(a) (preliminary questions concerning the admissibility of evidence are determined by the court); *see also E.I. du Pont de Nemours and Co., Inc. v. Robinson*, 923 S.W.2d 549, 556 (Tex.1995) (holding that the trial court is responsible for making the preliminary determination of whether scientific evidence meets the standards of admissibility).

Blackwell's assertion that the evidence was inadmissible because spoliation is a question of law was his sole basis at trial for the exclusion of evidence concerning the videotape. Although we have rejected Blackwell's argument in this regard, we must uphold the trial court's evidentiary ruling if there was any proper ground for the ruling, even a ground not urged at trial. *State Bar of Tex. v. Evans*, 774 S.W.2d 656, 658 n. 5 (Tex.1989); *Owens–Corning Fiberglas Corp. v. Wasiak*, 917 S.W.2d 883, 887–88 (Tex.App.—Austin 1996), *aff'd sub nom., Owens–Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35 (Tex.1998); *OKC Corp. v. UPG, Inc.*, 798 S.W.2d 300, 307 (Tex.App.—Dallas 1990, writ denied). We apply an abuse of discretion standard to the question of whether a trial court erred in excluding evidence. *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex.1995). A trial court may be reversed under this standard only when a reviewing court finds that the court acted in an unreasonable or arbitrary manner, *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex.1991), or without regard for any guiding rules or principles. *Owens–Corning Fiberglas Corp. v. Malone*, 972 S.W.2d at 43.

Before evidence is admissible, it must be relevant as defined by Texas Rule of Evidence 401. Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. TEX.R. EVID. 401. Although relevant, a trial court may nevertheless exclude evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury. TEX.R. EVID. 403.

Although Lively proved (1) an attempt was made to record the surgical procedure, (2) Blackwell maintained the tape at his office, and (3) the tape was blank when it was produced in discovery, she did not prove the procedure was actually recorded onto the videotape or that Blackwell destroyed the videotape if the procedure was recorded. As Miller testified at the hearing, simply because there is an image on the television monitor does not necessarily mean that anything is being recorded onto the videotape. Further, Miller testified that if the video equipment was hooked up incorrectly, the tape would not record and that one would not know this until the tape was viewed. Todd testified that on at least one other occasion, an attempt to videotape a procedure resulted in a blank videotape. He also testified that most of the videotapes were never viewed. Todd's testimony showed that (1) it was possible that an attempt to videotape a procedure could result in a blank videotape, and (2) it was possible that other attempts resulted in blank videotapes but no one knew this because the tapes were never viewed. Todd further testified that Trinity Valley does not have a policy regarding the maintenance and preservation of videotapes. Although Lively presented evidence from which it could be inferred that the videotape was a "hospital record," the record was unclear as to whether it was improper for Blackwell to maintain the tape at his office. Indeed, from Todd's testimony, it could be inferred that Blackwell was not acting improperly by maintaining the tape at his office. Blackwell testified that he never viewed the videotape prior to turning it over to his attorney. We recognize the potential of a videotape containing the laparoscopy to resolve a pivotal issue in this case. We also recognize Lively's frustration at not having the opportunity to introduce such a crucial piece of evidence before the jury. However, the probable value of the evidence Lively presented concerning alleged spoliation was outweighed by the potential for unfair prejudice and confusion of the issues was great. TEX.R. EVID. 403. To accept Lively's assertion that Blackwell destroyed the videotape, one would have to assume (1) that the surgical procedure was recorded onto the videotape, and (2) that because Blackwell maintained the tape at his office and the tape was blank when produced in discovery, Blackwell must have somehow caused the destruction of the tape. In the context of a trial, there are few, if any, more inflammatory accusations than that one party destroyed evidence. Where, as here, the only basis for the accusation consists of speculation and conjecture and a reasonable explanation for the missing evidence exists, such an accusation can unfairly taint the jurors' perception of the alleged spoliator as one who is dishonest and deceitful. In such a situation, it is legitimate and proper to exclude evidence of alleged spoliation. *Id.* Because a legitimate basis existed for the evidentiary ruling, we conclude that the trial court did not abuse its discretion in excluding the evidence at issue. *State Bar of Tex.*, 774 S.W.2d at 658 n. 5. Accordingly, Lively's first three issues are overruled.

## B. SPOLIATION PRESUMPTION

In issue four, Lively argues that the trial court erred in refusing to submit the following instruction to the jury:

You are instructed that Dr. Blackwell negligently or intentionally destroyed a videotape of the laparoscopy procedure that was created at the time of the procedure. Therefore, you may presume that the videotape would have been harmful to Dr. Blackwell.

A trial court has broad discretion in determining whether to provide juries with a spoliation presumption instruction. *Trevino*, 969 S.W.2d at 953; *Offshore Pipelines,*

*Inc. v. Schooley,* 984 S.W.2d 654, 667 (Tex. App.—Houston [1st Dist] 1998, no pet.). Generally, two rules apply to presumptions that derive from the nonproduction of evidence. One rule is that the intentional spoliation of evidence relevant to a case raises a presumption that the evidence would have been unfavorable to the spoliator. *Wal–Mart Stores, Inc. v. Middleton,* 982 S.W.2d 468, 470 (Tex.App.—San Antonio 1998, pet. denied); *H.E. Butt Grocery Co. v. Bruner,* 530 S.W.2d 340, 344 (Tex. Civ.App.—Waco 1975, writ dism'd). Here, there is no evidence that Blackwell intentionally destroyed the videotape at issue. The second rule states that failure to produce evidence within a party's control raises a rebuttable presumption that the missing evidence would be unfavorable to the nonproducing party. *Ordonez v. M.W. McCurdy Co., Inc.,* 984 S.W.2d 264, 273 n. 11 (Tex.App.—Houston [1st Dist.] 1998, no pet.). However, if the nonproducing party testifies as to the substance or contents of the missing evidence, the opposing party is not entitled to the presumption. *Brewer v. Dowling,* 862 S.W.2d 156, 159 (Tex.App.— Fort Worth 1993, writ denied). At trial, Blackwell testified that had the procedure been recorded, it would have shown what he observed during the surgery. He also testified concerning what he observed during surgery, including the fact that he did not observe bleeding at the incision site. Further, Blackwell presented testimony via cross-examination from Miller and Todd which provided a reasonable explanation for the blank videotape. *Wal Mart Stores, Inc.,* 982 S.W.2d at 471. Because

neither rule discussed above mandates the submission of the requested instruction, we conclude that the trial court did not abuse its discretion in refusing to submit such an instruction.[4] Accordingly, issue four is overruled.

The judgment of the trial court is *affirmed.*

---

4. In *Trevino,* Justice Baker stated that a trial judge should evaluate three factors in determining whether a spoliation presumption instruction should be given: (1) whether there existed a duty to preserve the evidence, (2) whether the alleged spoliator breached that duty, either negligently or intentionally, and (3) whether spoliation prejudiced the nonspoliator. *Trevino,* 969 S.W.2d at 954–55. At least two courts of appeal have applied these factors in determining whether a trial court erred in giving or refusing a spoliation presumption instruction. *Whiteside,* 12 S.W.3d at 621–22; *Offshore Pipelines, Inc.,* 984 S.W.2d at 666. Applying these factors, we conclude that the trial court did not err in refusing to submit the spoliation instruction because Appellant failed to present any evidence that Blackwell intentionally or negligently destroyed evidence.