# NO. 12-08-00368-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *BROOKSHIRE BROTHERS, LTD. ,*<br>*APPELLANT* | § | *APPEAL FROM THE 159TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *JERRY ALDRIDGE,*<br>*APELLEE* | § | *ANGELINA COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Brookshire Brothers, Ltd. appeals the trial court's judgment in a premises liability lawsuit brought by Jerry Aldridge.  In four issues, Brookshire Brothers asserts that the evidence is insufficient to support the judgment, that the trial court erred in admitting evidence of spoliation, and that the trial court erred by charging the jury with a spoliation instruction.  We affirm.

## BACKGROUND

Aldridge slipped on a liquid substance and fell while shopping at a Brookshire Brothers' store in Jacksonville, Texas.  Aldridge suffered a substantial spinal injury as a result of the fall. Initially unaware of the extent of his injury, Aldridge notified Brookshire Brothers employees of the substance and his fall, purchased some items, and left the store.  Shortly thereafter, Aldridge's pain began to increase, and he decided to seek out medical treatment at a local emergency room.  Several days later, Aldridge returned to the store and informed a Brookshire Brothers' manager of his injury.  The manager prepared a formal incident report, noting that Aldridge had injured his neck and back.

Brookshire Brothers later began paying for Aldridge's medical care, including treatment by a neurosurgeon.  During this time, Brookshire Brothers also preserved a short segment of a surveillance video recording of the day in question, but later allowed the remainder to be recorded over by the recording system.  The preserved segment, which was less than eight minutes in length, showed Aldridge entering the store, falling, and leaving.  It also showed Aldridge looking at items in certain parts of the store.  But it did not include portions of the

1

original recording that could have shown the source of the substance on the floor, additional employees that may have seen the substance, or the amount of effort necessary to clean the substance from the floor. Six minutes and fifty-three seconds of the preserved video were from the period directly before Aldridge fell.

After a failed attempt to overcome his injury and return to gainful employment, Aldridge filed a premises liability action against Brookshire Brothers. The case was tried to a jury. The trial court admitted evidence relating to the destruction of the video recording. The trial court also charged the jury with a spoliation instruction. The jury subsequently reached a verdict in favor of Aldridge and the trial court rendered judgment on the verdict. This appeal followed.

EVIDENTIARY SUFFICIENCY

In its third and fourth issues, Brookshire Brothers asserts that the evidence is legally and factually insufficient. Specifically, Brookshire Brothers alleges that the evidence is insufficient to support the elements of knowledge, proximate cause, and breach of care.

**Standard of Review**

When reviewing a jury's verdict for legal sufficiency, we may set aside the verdict only if the evidence at trial would not enable reasonable and fair-minded people to reach the verdict under review. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). In making this determination, we must credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not. *Id.* Jurors are the sole judges of the credibility of the witnesses and the weight to give their testimony. *Id.* at 819. They may choose to believe one witness and disbelieve another, and reviewing courts may not impose their own opinions to the contrary. *Id.* Most credibility questions are implicit rather than explicit in a jury's verdict. *Id.* Accordingly, reviewing courts must assume jurors decided all of them in favor of the verdict if reasonable human beings could do so. *Id.*

Nor is it necessary to have testimony from both parties before jurors may disbelieve either. *Id.* at 819-20. Jurors may disregard even uncontradicted and unimpeached testimony from disinterested witnesses. *Id.* at 820. Jurors are not free to believe testimony that is conclusively negated by undisputed facts. *Id.* But whenever reasonable jurors could decide what testimony to discard, a reviewing court must assume they did so in favor of their verdict, and disregard it in the course of legal sufficiency review. *Id.*

In addition, it is the province of the jury to resolve conflicts in the evidence. *Id.* Consequently, we must assume that, where reasonable, the jury resolved all conflicts in the evidence in a manner consistent with its verdict. *Id.* If reasonable jurors could resolve conflicting evidence either way, reviewing courts must presume they did so in favor of the

2

prevailing party, and disregard the conflicting evidence in their legal sufficiency review. *Id.* at 821. Where conflicting inferences can be drawn from the evidence, it is within the province of the jury to choose which inference to draw, so long as more than one inference can reasonably be drawn. *Id.* Therefore, we must assume jurors made all inferences in favor of their verdict if reasonable minds could, and disregard all other inferences in our legal sufficiency review. *Id.*

Regarding factual sufficiency challenges, where a party who did not have the burden of proof on an issue asserts that a jury's verdict is contrary to the evidence, we must overrule the complaint unless the verdict is so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). In conducting our review, we must consider all of the evidence that supports and that which is contrary to the verdict. *Sosa v. City of Balch Springs*, 772 S.W.2d 71, 72 (Tex. 1989). We must remember that the jury is the sole judge of the credibility of the witnesses. *See Santa Fe Petroleum, L.L.C. v. Star Canyon Corp.*, 156 S.W.3d 630, 638 (Tex. App.—Tyler 2004, no pet.) The jury may take into consideration all of the facts and surrounding circumstances in connection with the testimony of each witness and accept or reject all or any part of that testimony. *See id.* Where enough evidence is before the jury so that reasonable minds could differ on the meaning of the evidence, or the inferences and conclusions to be drawn from the evidence, we may not substitute our judgment for that of the jury. *See id.*

## Applicable Law

It is undisputed that Aldridge was an invitee of Brookshire Brothers. *See Rosas v. Buddies Food Store*, 518 S.W.2d 534, 536 (Tex. 1975) (invitee is person who enters premises with possessor's express or implied knowledge and for parties' mutual benefit). As such, Brookshire Brothers owed him a duty to exercise reasonable care to protect him from dangerous conditions in the store known or discoverable to it. *See Wal-Mart Stores, Inc. v. Gonzalez*, 968 S.W.2d 934, 936 (Tex. 1998). The duty a premises owner/operator owes to its invitees is not that of an insurer. *Brinson Ford, Inc. v. Alger*, 228 S.W.3d 161, 162 (Tex. 2007). In other words, the condition is not unreasonably dangerous simply because it is not foolproof. *See id.* at 163.

To recover damages in a premises liability case, a plaintiff must prove the following: (1) the owner/operator had actual or constructive knowledge of some condition on the premises; (2) the condition posed an unreasonable risk of harm; (3) the owner/operator did not exercise reasonable care to reduce or eliminate the risk; and (4) the owner/operator's failure to use reasonable care proximately caused the plaintiff's injuries. *See Gonzalez*, 968 S.W.2d at 936. An invitee's suit against a store owner/operator is a simple negligence action. *Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292, 295 (Tex. 1983). A store owner/operator's duty is to exercise reasonable care to protect against danger from a condition on the premises that creates an

3

unreasonable risk of harm of which the owner/operator knew or by the exercise of reasonable care could discover. *See **CMH Homes, Inc. v. Daenen***, 15 S.W.3d 97, 101 (Tex. 2000). The crux of this duty depends on actual or constructive knowledge of a dangerous condition that a reasonable inspection would reveal. *See **id.*** The proximate cause element has two components: cause-in-fact and foreseeability. ***LMB, Ltd. v. Moreno***, 201 S.W.3d 686, 688 (Tex. 2006). The test for cause-in-fact, or "but-for" causation, is whether (1) the act or omission was a substantial factor in causing the injury and (2) without the act or omission the harm would not have occurred. ***Id.***

In premises liability cases, there is no single test for determining actual knowledge that a condition presents an unreasonable risk of harm. *See **Univ. of Tex.—Pan Am. v. Aguilar***, 251 S.W.3d 511, 513 (Tex. 2008). Courts generally consider whether the premises owner/operator has received reports of prior injuries or reports of the potential danger presented by the condition. *See **id.*** Alternatively, constructive knowledge can be established by a showing that the condition had existed long enough for the owner or operator to have discovered it upon reasonable inspection. *See **Daenen***, 15 S.W.3d at 101.

## Discussion

Aldridge presented seven witnesses at trial and published to the jury the portion of the video recording preserved by Brookshire Brothers. Aldridge testified that he slipped on a liquid substance. The last part of the video recording supported this testimony by showing an employee signaling that a cleanup was required in the area where Aldridge fell. Six minutes and fifty-three seconds of the preserved video were from the period directly before Aldridge fell. Because no spill could be seen on the video, it was some evidence that the substance likely was on the floor during that period.

Aldridge presented the deposition testimony of Jonathan Tyler, a Brookshire Brothers manager. Tyler testified that, in light of the number of employees working in that area (which was near the check-out area of the store), the substance should have been noticed and cleaned up within less than five minutes. Further, the video showed a Brookshire Brothers employee walking very near the location where Aldridge fell almost three minutes beforehand. Tyler testified that employees are trained to look out for dangerous conditions on the floor and that the employee should have noticed the substance. The video also showed another Brookshire Brothers employee passing nearby four times within five minutes before the fall.

One known risk at the store was a rotisserie chicken display. Tyler testified that it was known that the containers for the chickens could leak when carried throughout the store by patrons. Tyler testified further that the rotisserie chicken display was near the area where Aldridge fell. Aldridge also offered documentary evidence of a manager's inspection of the

4

store.  The document, a log entry, indicated that a manager had inspected the store eight minutes before the fall.

Finally, the video supported the reasonable inference that the slippery substance covered a large area, and was thus more noticeable.  Tyler testified that employees are required to carry a paper towel with them to clean up small spills.  If the spill is too large, the employees are to enlist help to clean up the spill.  Here, the video showed an employee calling for help to clean up the substance in question.  Thus, the video was some evidence that the spill was too large to clean up with the towel each employee carries.

The video also showed the employee who noticed the substance pointing to the floor.  The area pointed to is near, but not exactly the same, as the area of the fall.  Robert Gilmer, Vice-President of Human Resources for Brookshire Brothers, testified that employees were trained to look out for spilled substances.  And Gilmer admitted that, if the substance extended from where Aldridge fell to the area pointed to, a Brookshire Brothers employee should have noticed it.

Brookshire Brothers disputed this evidence.  For example, Gilmer testified that Aldridge himself did not notice the spill, and therefore it must have been a small one.  Gilmer also testified that employees cannot guarantee perfect safety and that Brookshire Brothers employees are expected to be on the lookout, but not to carefully inspect each area.

In light of the record before us, we hold that the evidence is legally and factually sufficient to support the jury's verdict in relation to the elements of knowledge, proximate cause, and breach of care.  In the context of legal sufficiency, we hold that the evidence at trial would enable reasonable and fair minded people to reach the verdict under review. *See City of Keller*, 168 S.W.3d at 827.  In the context of factual sufficiency, we hold that the verdict is not so contrary to the overwhelming weight of the evidence as to be clearly wrong or manifestly unjust. *See Cain*, 709 S.W.2d at 176.  We overrule Brookshire Brothers' third and fourth issues.


### SPOLIATION

In its first and second issues, Brookshire Brothers challenges the trial court's decisions to admit evidence of spoliation and to include a spoliation instruction in the jury charge.

## Standard of Review

Spoliation is the improper destruction of evidence relevant to a case. *Adkison v. Adkison*, No. 12-06-00077-CV, 2007 WL 259550, at *3 (Tex. App.—Tyler Jan. 31, 2007, no pet.) (mem. op).

> Evidence spoliation is not a new concept.  For years courts have struggled with the problem and devised possible solutions.  Probably the earliest and most enduring solution was the spoliation inference or *omnia praesumuntur contra spoliatorem*: all things are presumed against a

wrongdoer. In other words, within the context of the original lawsuit, the factfinder deduces guilt from the destruction of presumably incriminating evidence.

*Trevino v. Ortega*, 969 S.W.2d 950, 952 (Tex. 1998) (internal citation omitted). This traditional response to the problem of evidence spoliation properly frames the alleged wrong as an evidentiary concept, not a separate cause of action. *Id.* Spoliation causes no injury independent from the cause of action in which it arises. *Id.* "If, in the ordinary course of affairs, an individual destroys his or her own papers or objects, there is no independent injury to third parties." *Id.* The destruction becomes relevant only when someone believes that those destroyed items are instrumental to his or her success in a lawsuit. *Id.*

"[W]hen spoliation occurs, there must be adequate measures to ensure that it does not improperly impair a litigant's rights . . . ." *Id.* at 953. It is simple, practical, and logical to rectify any improper conduct within the context of the lawsuit in which it is relevant. *Id.* "Indeed, evolving remedies, sanctions and procedures for evidence spoliation are available under Texas jurisprudence." *Id.* Trial judges have broad discretion to take measures ranging from a jury instruction on the spoliation presumption to, in the most egregious case, death penalty sanctions. *Id.* As with any discovery abuse or evidentiary issue, there is no one remedy that is appropriate for every incidence of spoliation; the trial court must respond appropriately based upon the particular facts of each individual case.[1] *Id.*

The loss or destruction of evidence may seriously impair a party's ability to present its case. *Tex. Electric Coop. v. Dillard*, 171 S.W.3d 201, 208 (Tex. App.—Tyler 2005, no pet.) (citing *Wal-Mart Stores, Inc. v. Johnson*, 106 S.W.3d 718, 721 (Tex. 2003)). When a party believes that another party has improperly destroyed evidence, it may either request a spoliation presumption instruction or move for other sanctions. *Adkison*, 2007 WL 259550, at *3 (citing *Trevino v. Ortega*, 969 S.W.2d 950, 954 (Tex. 1998) (Baker, J., concurring)). At that point, a trial court should determine whether a presumption instruction or another sanction is justified. *Adkison*, 2007 WL 259550, at *3 (citing *Trevino*, 969 S.W.2d at 954 (Baker, J., concurring)).

---

[1] The supreme court has explained that

[e]vidence may be unavailable for discovery and trial for a variety of reasons. Evidence may be lost, altered or destroyed willfully and in bad faith or it may be lost for reasons completely innocent. Sometimes, lost evidence may be easily replicated, or it may be so marginal that it has little or no effect on the outcome of the case. On other occasions, the loss or destruction of evidence may seriously impair a party's ability to present its case. A trial judge should have discretion to fashion an appropriate remedy to restore the parties to a rough approximation of their positions if all evidence were available. These remedies must generally be fashioned on a case-by-case basis.

*Wal-Mart Stores, Inc. v. Johnson*, 106 S.W.3d 718, 721 (Tex. 2003) (internal citation omitted).

6

The trial court enjoys discretion to fashion an appropriate remedy for negligent spoliation. *See Johnson*, 106 S.W.3d at 721.

> Because parties have a duty to reasonably preserve evidence, it is only logical that they should be held accountable for either negligent or intentional spoliation. While allowing a court to hold a party accountable for negligent as well as intentional spoliation may appear inconsistent with the punitive purpose of remedying spoliation, it is clearly consistent with the evidentiary rationale supporting it because the remedies ameliorate the prejudicial effects resulting from the unavailability of evidence. In essence, it places the burden of the prejudicial effects upon the culpable spoliating party rather than the innocent nonspoliating party.

*See Trevino*, 969 S.W.2d at 957 (Baker, J., concurring) (internal citation omitted). "Furthermore, by punishing negligent conduct, courts will deter future spoliation. The theory of deterrence is not merely limited to deterring intentional conduct. It applies equally to negligent conduct." *See id.* at 957 n.1.

Before any failure to produce material evidence may be viewed as discovery abuse, the opposing party must establish that the nonproducing party had a duty to preserve the evidence in question. *Dillard*, 171 S.W.3d at 209 (citing *Johnson*, 106 S.W.3d at 722). There must be a sufficient foundational showing that the party who destroyed the evidence had notice both of the potential claim and of the evidence's potential relevance thereto. *Dillard*, 171 S.W.3d at 209 (citing *Johnson*, 106 S.W.3d at 722). An objective test for anticipation of litigation is whether a reasonable person would conclude from the severity of the accident and other circumstances surrounding it that there was a substantial chance for litigation. *Dillard*, 171 S.W.3d at 209 (citing *Johnson*, 106 S.W.3d at 722). "A party should not be able to subvert the discovery process and the fair administration of justice simply by destroying evidence before a claim is actually filed." *See Trevino*, 969 S.W.2d at 955 (Baker, J., concurring).

**Evidence of Spoliation**

In its first issue, Brookshire Brothers complains that the trial court erred by admitting evidence relating to the issue of spoliation. The complained of evidence included documentary evidence showing that Brookshire Brothers paid for Aldridge to be treated by a neurosurgeon before it allowed the unpreserved portions of the video recording from the area of the store in question to be destroyed. It was undisputed that the preserved portion of the video recording accounted for less than eight minutes of a recording that covered a twenty-four hour period. The preserved recording included Aldridge's entering the store, falling, and leaving the store.

First, Brookshire Brothers asserts that it had no duty to preserve the unpreserved portions of the video recording. Second, it asserts that Aldridge was not prejudiced by its failure to preserve any additional portions of the recording. Third, it asserts that it provided a reasonable explanation for not preserving additional portions. And, fourth, it asserts that, because Aldridge

failed to establish the former elements of spoliation, the evidence was improperly prejudicial under rule 403 of the Texas Rules of Evidence.

### *Duty*

Here, the trial court was presented with the question of duty and resolved it against Brookshire Brothers. This was based on the undisputed fact that Brookshire Brothers had control of the entire video recording. After Aldridge returned to the store and "reported his claim," Brookshire Brothers preserved less than eight minutes of the recording. The remainder was subsequently destroyed as part of the recording system utilized by Brookshire Brothers.

By the time the unpreserved remainder was destroyed, Aldridge had notified Brookshire Brothers of his injury, a Brookshire Brothers manager had prepared a written incident report noting a neck and back injury, and Brookshire Brothers had begun paying for Aldridge to be treated by a neurosurgeon. Evidence showed that Brookshire Brothers routinely compensated injured customers for two initial doctor's visits. However, this treatment went beyond those two visits and involved a specialist. Indeed, Brookshire Brothers' own correspondence during the period in question referred to Aldridge as having a "claim." Finally, Aldridge had, by this time, requested to see a portion of the video recording from the day in question.

"A party should not be able to subvert the discovery process and the fair administration of justice simply by destroying evidence before a claim is actually filed." *See **id.*** Here, a reasonable person would conclude from the severity of the accident and other circumstances surrounding it that there was a substantial chance for litigation. *See **Johnson***, 106 S.W.3d at 722; ***Dillard***, 171 S.W.3d at 209. Further, because of the nature of the video in question, it was reasonable to conclude that Brookshire Brothers was on notice of its potential relevance. *See **Johnson***, 106 S.W.3d at 722; ***Dillard***, 171 S.W.3d at 209.

### *Prejudice to Aldridge*

Brookshire Brothers asserts that Aldridge was not prejudiced by its failure to preserve any additional portions of the recording. In short, Brookshire Brothers argues that Aldridge failed to present sufficient evidence to the trial court that he was prejudiced by the destruction of the unpreserved portions. However, the small portion of the video preserved was sufficient to show that the destroyed video would have been highly probative.

First, the camera recorded a part of the store that included the rotisserie chicken display and the area where Aldridge fell. Second, it showed persons passing by that area. Therefore, the video would have been some evidence of when a spill occurred or the length of time that the spill remained. That the video would probably have contained evidence of these facts is not

speculation but is a reasonable inference from the portion of the video that was retained. In addition, the video would have shown the cleanup efforts and any immediate investigation, both demonstrating the size of the spill. And the video might have shown the manager's store inspection that was noted in the log book.

To the extent that a court could not discern with certainty what else might be shown on the video, that absence of proof is a direct result of Brookshire Brothers destroying it. In fact, the evidence at trial, including the testimony of Tyler and Gilmer, established that no person, including employees of Brookshire Brothers, ever viewed any of the unpreserved portions of the video recording. Thus, it was proper for the trial court to give deference to the nonspoliating party's assertions of relevancy. *See Trevino*, 969 S.W.2d at 958 (Baker, J., concurring); *see also Johnson*, 106 S.W.3d at 721 (intentional spoliation of relevant evidence raises presumption that evidence would have been unfavorable to spoliator).

We note Brookshire Brothers' argument that Aldridge could have, perhaps, conducted additional discovery to discern any relevant information. However, the bare allegation that currently unknown evidence might have existed is not sufficient to overcome the presumption that Brookshire Brothers destroyed the recording for a reason. *See Trevino*, 969 S.W.2d at 958 (Baker, J., concurring); *see also Johnson*, 106 S.W.3d at 721. Moreover, any other evidence would have been in the form of testimony, subject to the witnesses' misperceptions and fading memories. And this testimony may have been from Brookshire Brothers employees, who could have had interests adverse to Aldridge. As counsel for Brookshire Brothers explained to the jury when speaking of the preserved portion of the recording, "the video in this case is your best friend," "the video doesn't lie. It's just credible."

*Reasonable Explanation*

Brookshire Brothers asserts that it provided a reasonable explanation for not preserving additional portions. Specifically, Brookshire Brothers claims that it preserved what Gilmer believed was the amount necessary to show whether a fall occurred. According to Brookshire Brothers, "[n]othing more was requested of Brookshire Brothers [by Aldridge] until long after the original video had been [destroyed] in the ordinary course of business." However, as the late Justice Baker explained,

> [a] spoliator can defend against an assertion of negligent or intentional destruction by providing other explanations for the destruction. For example, if the destruction of the evidence was beyond the spoliator's control or done in the ordinary course of business, the court may find that the spoliator did not violate a duty to preserve evidence. Importantly though, when a party's duty to preserve evidence arises before the destruction or when a policy is at odds with a duty to maintain records, the policy will not excuse the obligation to preserve evidence.

*See Trevino*, 969 S.W.2d at 957 (Baker, J., concurring). Here, as we explained above, Brookshire Brothers had a duty to preserve additional portions of the destroyed recording. The fact that Brookshire Brothers destroyed these portions before a request to preserve them was made or a lawsuit filed does not override the fact that it destroyed these portions during a period in which it had a duty to preserve them. *See id.*

### 403 Prejudice

Finally, Brookshire Brothers argues that, because Aldridge failed to establish the formerly addressed elements of spoliation, the evidence was improperly prejudicial under rule 403 of the Texas Rules of Evidence. "In the context of a trial, there are few, if any, more inflammatory accusations than that one party destroyed evidence." *Lively v. Blackwell*, 51 S.W.3d 637, 642 (Tex. App.—Tyler 2001, pet. denied). Nonetheless, the trial court has the discretion to admit or exclude evidence of spoliation to the jury. *Id.* at 641. Where the only basis for the accusation consists of speculation and conjecture and a reasonable explanation for the missing evidence exists, such an accusation can unfairly taint the jurors' perception of the alleged spoliator as one who is dishonest and deceitful. *Id.* at 642. In such a situation, it is legitimate and proper to exclude evidence of alleged spoliation. *Lively*, 51 S.W.3d at 642 (citing TEX. R. EVID. 403).

Here, unlike the situation mentioned in *Lively*, the evidence of spoliation rose beyond "speculation and conjecture." *See Lively*, 51 S.W.3d at 642. And as we have discussed above, no "reasonable explanation for the missing evidence exists." *See id.* Instead, the evidence of spoliation included sufficient evidence of the above described elements. In light of Brookshire Brothers' argument, we cannot say that it has shown a 403 objection could be properly sustained. *See Lively*, 51 S.W.3d at 642 (citing TEX. R. EVID. 403)

### Conclusion

A trial court abuses its discretion when its decision is arbitrary, unreasonable, or without reference to any guiding rules or legal principles. *K-Mart Corp. v. Honeycutt*, 24 S.W.3d 357, 360 (Tex. 2000). "The mere fact that a trial judge may decide a matter within his discretionary authority in a different manner than an appellate judge in a similar circumstance does not demonstrate that an abuse of discretion has occurred." *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242 (Tex. 1985). From the arguments raised by Brookshire Brothers, we cannot discern that the trial court abused its discretion by admitting spoliation evidence at trial.

## Spoliation Instruction

In its second issue, Brookshire Brothers complains of the trial court's decision to charge the jury with a spoliation instruction. The instruction in question read as follows:

In this case, Brookshire Brothers permitted its video surveillance system to record over certain portions of the store surveillance video of the day of the occurrence in question. If you find that Brookshire Brothers knew or reasonably should have known that such portions of the store video not preserved contained relevant evidence to the issues in this case, and its non-preservation has not been satisfactorily explained, then you are instructed that you may consider such evidence would have been unfavorable to Brookshire Brothers.

Brookshire Brothers alleges that, based upon its previous arguments regarding the admission of spoliation evidence, a spoliation charge was improper.[2]

"A trial judge has broad discretion in determining whether to provide a jury with a spoliation presumption instruction." *Dillard*, 171 S.W.3d at 208 (citing *Johnson*, 106 S.W.3d at 721; *Trevino*, 969 S.W.2d at 953); *see Lively*, 51 S.W.3d at 642. A spoliation instruction is an instruction given to the jury outlining permissible inferences they may make against a party who has lost, altered, or destroyed evidence. *Dillard*, 171 S.W.3d at 208; *Hopper v. Swann*, No. 12-02-00269-CV, 2004 WL 948526, at *2 (Tex. App.—Tyler Apr. 30, 2004, no pet.) (mem. op.). Generally, two rules apply to presumptions that derive from the nonproduction of evidence. *Lively*, 51 S.W.3d at 643. One rule is that the intentional spoliation of evidence relevant to a case raises a presumption that the evidence would have been unfavorable to the spoliator. *Id.*; *see Johnson*, 106 S.W.3d at 721; *Adkison*, 2007 WL 259550, at *3; *Dillard*, 171 S.W.3d at 208. The second rule states that the failure to produce evidence within a party's control raises a rebuttable presumption that the missing evidence would be unfavorable to the nonproducing party. *Lively*, 51 S.W.3d at 643. "However, if the nonproducing party testifies as to the substance or contents of the missing evidence, the opposing party is not entitled to the presumption." *Id.*

Here, by saving a small portion of video and allowing the remainder to be destroyed, Brookshire Brothers engaged in the "intentional spoliation of evidence relevant to a case." *Cf. Dillard*, 171 S.W.3d at 208; *Lively*, 51 S.W.3d at 643. In light of the evidence before the trial court, we hold that the trial court did not abuse its "broad discretion" by charging the jury with the above spoliation instruction. *See Dillard*, 171 S.W.3d at 208; *Lively*, 51 S.W.3d at 642.

**Conclusion**

The trial court did not abuse its discretion when admitting the spoliation evidence or charging the jury with the spoliation instruction. Therefore, we overrule Brookshire Brothers' first and second issues.

---

[2] We have previously implied that a party may seek *either* a spoliation instruction *or* another sanction. *See Adkison*, 2007 WL 259550, at *3. However, a trial court must first be able to admit evidence of spoliation before charging the jury with a spoliation instruction of the type in question. Further, we did not hold that a situation could never exist where both an instruction and another sanction were proper.

## DISPOSITION

We *affirm* the judgment of the trial court.

**BRIAN HOYLE**
Justice

Opinion delivered July 30, 2010.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(PUBLISH)

12