

NUMBER 13-10-00547-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**MARTIN LEE CHAVIS JR.,**                        **Appellant,**

**v.**

**THE STATE OF TEXAS,**                            **Appellee.**

---

**On appeal from the County Court at Law No. 3
of Jefferson County, Texas.**

---

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Garza
Memorandum Opinion by Justice Rodriguez**

Appellant Martin Lee Chavis Jr. challenges his conviction for driving while intoxicated, a class B misdemeanor. *See* TEX. PENAL CODE ANN. § 49.04(a), (b) (West

2003).   By seven issues, which we renumber as three,[1] Chavis argues that:   (1) his due process rights were violated when the State lost or destroyed the videotape of his arrest; (2) the trial court erred in denying his proposed spoliation jury instruction regarding the lost or destroyed videotape; and (3) the evidence was insufficient to prove he was intoxicated.   We affirm.

## I.  Background

On April 14, 2007, Chavis was arrested in Beaumont, Texas, after he was pulled over and the police determined that he was allegedly intoxicated.   Chavis was charged by information for driving while intoxicated.   *See id.*   He pleaded not guilty.

At a pretrial hearing, Chavis moved to dismiss the charges, urging the trial court to dismiss the case in light of the State's loss or destruction of the videotape of his arrest. Chavis argued that the videotape could have been exculpatory and would have been the only evidence to contradict the trial testimony of the arresting officer.   The State responded that the loss or destruction of the videotape had been inadvertent.   The State informed the trial court that the charges against Chavis had been dismissed at some point earlier in the case, following Chavis's complaint of a deficiency in the information. The case was later re-filed under a different cause number.   The State believed that, pursuant to procedure upon receiving a notice of dismissal, the State's property

---

[1] By further separately-listed issues, Chavis asserts that his constitutional rights were violated when the arresting police officer "converted [Chavis]'s exercise of his [Fifth and Sixth Amendment] rights . . . into his primary basis for arrest[ing] Chavis."   By these issues, Chavis appears to contend that his arrest was solely the result of his refusal to participate in field sobriety tests and his request for a lawyer, and for these reasons, his conviction "must be reversed as a matter of law."   Despite Chavis's invocation of these federal constitutional rights, Chavis does not challenge the legality of his arrest, the evidence seized as a result of the arrest, or anything further related to his arrest.   Instead, these issues appear to be additional arguments in support of Chavis's challenge to the sufficiency of the evidence supporting the intoxication element of his conviction.   Thus, we will not treat them as issues separate and apart from Chavis's broader sufficiency challenge.   *See* TEX. R. APP. P. 47.1.

department may have mistakenly destroyed the tape. As such, the State contended that the destruction or loss of the tape resulted from this confusion. The trial court denied Chavis's motion to dismiss.

The case then proceeded to trial by jury. At trial, the only evidence introduced by the State was the testimony of Beaumont Police Officer J. Thomas Revia, the arresting police officer. Officer Revia testified that he pulled Chavis over a little after 1:00 a.m. on April 14, 2007, after Chavis ran a red light. When Officer Revia asked Chavis for his driver's license, Chavis fumbled while trying to retrieve it from his wallet. Officer Revia asked Chavis to step out of his vehicle and, at this point, noticed a strong odor of alcohol. Officer Revia testified that Chavis stumbled when he got out of the vehicle and had to use the vehicle to steady himself. Officer Revia noticed that Chavis's eyes were bloodshot and glassy, his speech was slurred, and he was unsteady on his feet. When he searched the vehicle, Officer Revia discovered a partially empty bottle of Crown Royal and a cup with a few drops of liquor in it. Officer Revia testified that Chavis was generally uncooperative and kept repeating himself when he spoke. Chavis admitted to Officer Revia that he "had two beers" earlier in the evening. Chavis refused to perform field sobriety tests and would not give a breath sample. Based on the foregoing, Officer Revia testified that it was his opinion that Chavis was intoxicated.

On cross-examination, Officer Revia acknowledged that at the beginning of the traffic stop, he offered to let Chavis call someone to come pick him up and take him home. Officer Revia also acknowledged that, at some point, Chavis asked for a lawyer, and when this happened, Officer Revia stopped questioning Chavis. On re-direct, Officer Revia testified that he would not have arrested Chavis if he did not believe he was

3

intoxicated. Officer Revia also testified that he offered to let Chavis call someone to pick him up to "cut him a break," but when Chavis was unable to contact anyone, Officer Revia observed Chavis for "some time" before determining he was intoxicated and placing him under arrest.

At the close of the State's evidence, Chavis moved for a directed verdict, arguing that the trial court should direct a verdict of not guilty because the lost or destroyed videotape of Chavis's arrest was the only evidence that could have rebutted Officer Revia's account of the events. The trial court denied Chavis's motion.

Chavis then testified on his own behalf. Chavis testified that he had dropped a friend off at his girlfriend's house before he was stopped by Officer Revia and that the bottle of Crown Royal and cup with liquor in it belonged to his friend. Chavis was unaware that Officer Revia had found the bottle and cup in his vehicle. Chavis acknowledged that he drank two beers that evening, but testified that he had his last drink around 10:00 p.m, well before he was pulled over. Chavis testified that he told Officer Revia he wanted a lawyer almost immediately after he was unable to contact anyone on the phone to pick him up and that he was upset once he realized that Officer Revia was going to arrest him. Chavis does not remember Officer Revia asking him to perform field sobriety tests or give a breath or blood sample. Chavis disagreed that he stumbled when he got out of his vehicle, but testified that if he did stumble, it must have been due to an old brain injury from 2004. Chavis testified that he was not ill the evening that he was arrested by Officer Revia.

During the charge conference, Chavis requested a spoliation jury instruction. Chavis's proposed instruction would have allowed the jury to draw an adverse inference

4

against the State regarding the content of the videotape because of the State's allegedly unexplained failure to produce the tape. The trial court denied Chavis's requested instruction.

The jury then found Chavis guilty of the charged offense, and the trial court sentenced Chavis to 180 days in county jail, which sentence was suspended and probated for one year, and assessed a $500 fine. This appeal followed.[2]

## II. The Videotape of Chavis's Arrest

In two issues, Chavis complains of the State's loss or destruction of the videotape of his arrest.

## A. Failure to Preserve Evidence and Due Process

By his first issue, Chavis argues that the State violated his due process rights by losing or destroying the videotape. By this issue, Chavis appears to challenge the State's failure to preserve exculpatory evidence, and we will review the issue as such.

The Due Process Clause of the Fourteenth Amendment requires that criminal prosecutions "comport with prevailing notions of fundamental fairness." *California v. Trombetta*, 467 U.S. 479, 485 (1984).

> We have long interpreted this standard of fairness to require that criminal defendants be afforded a meaningful opportunity to present a complete defense. To safeguard that right, the Court has developed "what might loosely be called the area of constitutionally guaranteed access to evidence." *United States v. Valenzuela–Bernal*, 458 U.S. 858, 867 . . . (1982). Taken together, this group of constitutional privileges delivers exculpatory evidence into the hands of the accused, thereby protecting the innocent from erroneous conviction and ensuring the integrity of our criminal justice system.

---

[2] This case is before the Court on transfer from the Ninth Court of Appeals in Beaumont pursuant to a docket equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2005).

5

*Id.*

For instance, "[t]he Due Process Clause of the Fourteenth Amendment requires the State to disclose to criminal defendants favorable evidence that is material either to guilt or to punishment." *Id.* at 480; *see* U.S. CONST. amend. XIV. And like the duty to disclose, the Due Process Clause also governs the State's duty to preserve evidence. *See Trombetta*, 467 U.S. at 480-81, 488-89. In *Trombetta*, the United States Supreme Court reserved to the states the ability to more rigorously define the prosecution's duty to preserve evidence. *Id.* at 491 n.12. Under Texas law,

> [t]he duty to preserve evidence [under the Due Process Clause] is limited to evidence that possesses an exculpatory value that was apparent before the evidence was destroyed. [*Id.* at 489]; *McDonald v. State*, 863 S.W.2d 541, 543 (Tex. App.—Houston [1st Dist.] 1993, no pet.). Therefore, a defendant must demonstrate the lost evidence was both favorable and material to his case. [*United States*] *v. Valenzuela–Bernal*, 458 U.S. 858, 873 . . . (1982); *Nastu v. State*, 589 S.W.2d 434, 441 (Tex. Crim. App. 1979); *McDonald*, 863 S.W.2d at 543. A showing that the lost evidence might have been favorable does not satisfy the materiality requirement. *McDonald*, 863 S.W.2d at 543; *Hebert v. State*, 836 S.W.2d 252, 254 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd). Further, to establish that the failure to preserve the videotape constitutes a violation of due process or due course of law rights, appellant must demonstrate the police [lost or destroyed] the videotape in bad faith. *See Hebert*, 836 S.W.2d at 254.

*Mahaffey v. State*, 937 S.W.2d 51, 53 (Tex. App.—Houston [14th Dist.] 1996, no pet.).

Here, both before trial and after the close of the State's evidence during trial, Chavis asked the trial court to dismiss the case in light of the loss or destruction of the videotape of his arrest. In both instances before the trial court and now on appeal, Chavis argues that the videotape was highly material to the case. Chavis argues that the videotape was the only evidence that would have allowed the jury to form its own opinion about Chavis's behavior and demeanor during the traffic stop as opposed to the jury

relying solely on the "subjective" testimony of the arresting police officer. Chavis further argues that bad faith on the part of the prosecution must be inferred because the loss or destruction of the tapes was in contravention of well-established policies regarding the custody and preservation of evidence.

While we agree that the videotape would have given the jury a different perspective on Chavis's arrest, we cannot conclude that Chavis sufficiently demonstrated the exculpatory value of the videotape. At the hearing on his pretrial motion to dismiss, Chavis asserted that the videotape is exculpatory because it would have given "the jury the *opportunity* to view [Chavis's] demeanor, his conduct, the way he walked, the way he talked," which Chavis contended would "show the jury that he was not intoxicated." (Emphasis added.) Similarly, in his motion for directed verdict, Chavis asserted that the videotape "would have verified *whether or not* this officer was *mistaken or not mistaken*[, which] would have helped all of us *in being able to decide* just how [Chavis] appeared" at the time of his arrest. (Emphasis added.) Both assertions are speculative as to the contents of the videotape and show only that the videotape might have been favorable to Chavis's defense. In short, neither assertion was sufficient to meet the materiality standard required for a due process violation. *See id.*

We also cannot conclude that the loss or destruction of the videotape was in bad faith. Chavis argues that the State's established protocols for the custody and preservation of evidence make it "implausible" that the loss or destruction of the tape was inadvertent. But the State provided an entirely plausible explanation for the loss or destruction of the tape in response to Chavis's pretrial motion to dismiss. After Chavis requested that the charges against him be dismissed because of a defect in the

information, the State re-filed the case under a new cause number. The State posited that this may have caused confusion with its property department, which may have mistakenly destroyed the videotape upon learning of the dismissal of the initial cause number. In light of this explanation, we cannot say that the trial court erred in determining that Chavis failed to show bad faith on the part of the State in destroying the videotape.

In sum, Chavis demonstrated neither that the destroyed videotape was exculpatory nor that the State acted in bad faith in destroying it. Thus, Chavis has not shown that his due process rights were violated by the failure, if any, to preserve the evidence, and the trial court did not err in denying both the pretrial motion to dismiss and the motion for directed verdict on this basis. Chavis's first issue is overruled.

## B. Spoliation Instruction

By his second issue, Chavis complains that the trial court erred in denying his request for a spoliation jury instruction. During the charge conference, Chavis asked the trial court to include an instruction in the jury charge that allowed the jury to "infer that the [video]tape would be beneficial to [Chavis] and/or not beneficial to" the State.[3] Chavis argued that such an instruction was appropriate as the loss or destruction of the videotape remained unexplained by the State.

In the civil context, when a party fails to produce evidence within the party's

---

[3] Although Chavis has attached the text of his proposed instruction as an appendix to his brief, the text of the proposed instruction does not appear in the appellate record. *See* TEX. R. APP. P. 34.1 ("The appellate record consists of the clerk's record and, if necessary to the appeal, the reporter's record . . . ."). Because we may not consider documents attached to an appellate brief that are not part of the appellate record, we therefore base our analysis on the apparent content of the proposed instruction as revealed during the discussion between the parties on the record at the charge conference. *See Booth v. State*, 499 S.W.2d 129, 135 (Tex. Crim. App. 1973); *see also Mendiola v. State*, No. 04-10-00245-CR, 2011 WL 2637415, at *4 (Tex. App.—San Antonio July 6, 2011, no pet.) (mem. op., not designated for publication).

control, the opposing party is entitled to a jury instruction under which the jury may presume that if the evidence were produced, it would operate against the party who failed to produce it. *See Lively v. Blackwell*, 51 S.W.3d 637, 643 (Tex. App.—Tyler 2001, pet. denied); *Watson v. Brazos Elec. Power Co-op., Inc.*, 918 S.W.2d 639, 643 (Tex. App.—Waco 1996, pet. denied); *see also Wal-Mart Stores, Inc. v. Johnson*, 106 S.W.3d 718, 721-22 (Tex. 2003) (holding that a spoliation of evidence presumption arises when the party controlling the missing evidence cannot explain its failure to produce it). But in criminal cases involving the State's failure to preserve evidence, the defendant is required to show some bad faith on the part of the State and some indication that the evidence would have been exculpatory in order to be entitled to a spoliation-type jury instruction. *See Snell v. State*, 324 S.W.3d 682, 684 (Tex. App.—Fort Worth 2010, no pet.); *White v. State*, 125 S.W.3d 41, 43-44 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd); *see also Moore v. State*, No. 74,059, 2004 WL 231323, at *4-5 (Tex. Crim. App. Jan. 14, 2004) (not designated for publication) (holding that the trial court did not err by refusing a requested spoliation instruction when the record did not show that the item possessed exculpatory value to appellant before it was destroyed, nor bad faith by the police in its destruction); *Gutierrez v. State*, No. 11-10-00276-CR, 2011 WL 4135743, at *1 (Tex. App.—Eastland Sept. 15, 2011, no pet.) (mem. op., not designated for publication) (holding that where the defendant could show only that the lost evidence might have been exculpatory and could not show bad faith on the part of the State, the trial court did not err in refusing the spoliation instruction).

Here, as discussed above, Chavis showed only that the videotape of his arrest might have been exculpatory and did not show that the State acted in bad faith in losing or

destroying the videotape.  For these reasons, the trial court did not err in denying Chavis's requested spoliation jury instruction.   Chavis's second issue is overruled.

### III.   Evidence of Intoxication

By his third issue, Chavis argues that there was insufficient evidence of intoxication.   Specifically, Chavis argues that the testimony of Officer Revia did not include sufficient information from which the jury could have determined that Chavis was intoxicated.   Chavis further argues that the evidence was insufficient because it is plain from the testimony at trial that he was only arrested because he refused to perform a field sobriety test and requested a lawyer.

### A.   Standard of Review and Applicable Law

In a sufficiency review, courts examine the evidence in the light most favorable to the verdict to determine whether "any rational fact finder could have found guilt beyond a reasonable doubt."   *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); s*ee Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) ("[T]he *Jackson* legal-sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt.").   This standard requires reviewing courts to resolve any evidentiary inconsistencies in favor of the judgment, keeping in mind that the jury is the exclusive judge of the facts, the credibility of the witnesses, and the weight to give their testimony.   *Brooks*, 323 S.W.3d at 899; *see* TEX. CODE CRIM. PROC. ANN. art. 38.04 (West 1979) ("The jury, in all cases, is the exclusive judge of the facts proved, and of the weight to be given to the testimony. . . .").   Appellate courts do not re-evaluate the weight and credibility of the evidence; they only ensure that the fact finder reached a rational

10

decision. *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). A fact finder may support its verdict with reasonable inferences drawn from the evidence, and it is up to the fact finder to decide which inference is most reasonable. *Id.* at 523.

Legal sufficiency is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009); *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). "Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Villarreal*, 286 S.W.3d at 327; *see Malik*, 953 S.W.2d at 240. Here, Chavis was intoxicated as defined by the relevant statute if he did not have "the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body." TEX. PENAL CODE ANN. § 49.01(2)(A) (West 2003).

Intoxication may be proved by evidence of, among other things, slurred speech, bloodshot eyes, the odor of alcohol on the person or breath, unsteady balance, or a staggered gait. *See Cotton v. State*, 686 S.W.2d 140, 142 n. 3 (Tex. Crim. App. 1985) (citations omitted); *see also Vera v. State*, Nos. 13-05-169-CR, 13-05-170-CR, 2008 WL 5181930, at *2 (Tex. App.—Corpus Christi Aug. 29, 2008, no pet.) (mem. op., not designated for publication). An open container of alcohol in the vehicle within the defendant's reach and the defendant's refusal to submit to standard tests of intoxication, such as a breath test or field sobriety tests, are also relevant evidence of intoxication.

11

*See Bartlett v. State*, 270 S.W.3d 147, 153 (Tex. Crim. App. 2008) (refusal to take breath test is relevant evidence of intoxication); *Warren v. State*, No. 01-10-00047-CR, 2011 WL 4036139, at *4 (Tex. App.—Houston [1st Dist.] 2011, pet. filed) ("The presence of an open container of alcohol in the vehicle driven by appellant is some evidence that he was drinking while driving.") (citing *Kimball v. State*, 24 S.W.3d 555, 559-60 (Tex. App.—Waco 2000, no pet.); *Sneed v. State*, 964 S.W.2d 764, 766 (Tex. App.—Texarkana 1998, no pet.)); *Barraza v. State*, 733 S.W.2d 379, 381 (Tex. App.—Corpus Christi 1987) *aff'd*, 790 S.W.2d 654 (Tex. Crim. App. 1990) (holding that there is no significant difference between a refusal to take a field sobriety test and a refusal to perform a breath test for evidentiary purposes).

## B. Analysis

Here, there was ample evidence from which the jury could have found that Chavis was intoxicated. Officer Revia's testimony that Chavis fumbled with his driver's license, stumbled when he exited the vehicle, slurred his speech, smelled of alcohol, and had bloodshot, glassy eyes is all evidence the jury could have properly used to support its verdict. *See Annis v. State*, 578 S.W.2d 406, 407 (Tex. Crim. App. [Panel Op.] 1979) (holding that the opinion testimony of the arresting officer alone is legally sufficient to support a finding of intoxication); *Hartman v. State*, 198 S.W.3d 829, 835 (Tex. App.—Corpus Christi 2006, pet. struck) (same). The fact that there was an open container of alcohol in Chavis's vehicle is further evidence; the jury was free to disbelieve Chavis's testimony that the Crown Royal bottle and cup with liquor in it belonged to a friend. *See Brooks*, 323 S.W.3d at 899. Similarly, the jury was free to credit Officer Revia's testimony—over Chavis's denial—that Chavis refused to perform field sobriety

tests or give a breath sample, both of which are evidence of intoxication the jury was permitted to consider. *See id.* Finally, although Chavis contends on appeal that he was arrested not because of intoxication but, rather, because he exercised his constitutional right to demand an attorney, there was evidence at trial that Chavis did not make his demand until after Officer Revia had already gathered sufficient information about Chavis's behavior and demeanor to determine that he was intoxicated.

Viewing the foregoing in the light most favorable to the verdict, we conclude that there was sufficient evidence from which a rational jury could conclude that Chavis was intoxicated at the time of his arrest. *See Jackson*, 443 U.S. at 319; *Laster*, 275 S.W.3d at 517. Chavis's third issue is overruled.

## IV. Conclusion

We affirm the judgment of the trial court.

NELDA V. RODRIGUEZ
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the 23rd
day of February, 2012.